(121 App. Div. 538.)

BUSH v. HALSTED et al.

(Supreme Court, Appellate Division, Second Department. October 4, 1907.)

1. ATTORNEY AND CLIENT—DUTIES OF ATTORNEY TO CLIENT—CLIENT AS ASSIGNEE FOR CREDITORS—SALE OF LAND—PURCHASE BY ATTORNEY.

The sale, conducted by the attorneys of a trustee, to whom an insolvent made an assignment for creditors, one of the attorneys acting as auctioneer, to one with whom, unknown to the trustee or insolvent, the attorney had agreed that, if he became the purchaser, it should be for the joint benefit of them and him, is invalid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 250–263.]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS—SALE OF LANDS—VALIDITY—WHO MAY ATTACK SALE.

The invalidity of the sale conducted by the attorneys of the trustee, to whom an insolvent made an assignment for creditors, one of them acting as auctioneer, to one with whom, unknown to the trustee or insolvent, they had agreed that, if he became the purchaser, it should be for the joint benefit of them and him, may be asserted, not only by the trustee, but by the insolvent; the assignment providing for return to him of any surplus after payment of the creditors, so that, under Laws 1875, p. 618, c. 545, there was a reverter to him.

3. REMAINDERS—ACTION BY REMAINDERMAN—LIMITATIONS.

One's right of action to recover land in which he has a remainder interest does not accrue till after death of the life tenant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Remainders, § 13.]

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS—ATTACKING SALE.

The invalidity of a sale by a trustee, to whom an insolvent made an assignment for creditors, with provision for return to him of any surplus after payment of his debts, because of the attorneys who conducted the sale for the trustee becoming the purchasers through another, need not be asserted in the accounting proceedings by the trustee, or by action to avoid the final order of confirmation therein, but may be by a subsequent independent action.

5. SAME—NOTICE OF INVALID SALE—RECORDS.

The debtor who makes an assignment for creditors to a trustee, with provision for return to him of any surplus after payment of his debts, is not chargeable with constructive notice of the fact that the attorneys who conducted the sale for the trustee made the sale to one with whom they had agreed that the purchase, if made by him, should be for the joint benefit of them and him, because of the recording, after the sale and the delivery of the deed to the purchaser, of such agreement.

Appeal from Special Term, Westchester County.

Action by Andrew L. Bush, as sole surviving executor of and trustee under the will of Newberry D. Halsted, deceased, against Augustus M. Halsted and others. From part of the judgment, defendant Forrest H. Parker appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Matthew C. Fleming, for appellant.
William C. Beecher, for respondent Halsted.

JENKS, J. This action is by the surviving trustee under the will of Newberry Halsted, deceased, to pass his accounts and incidentally to determine the ownership of certain lands involved. The accounts were passed without objection, and the sole question litigated and brought up to us relates to the said lands, as to which two of the defendants present conflicting claims. The will of the testator, who died in 1862, gave the remainder of his estate, real and personal, to his executors, in trust for the benefit of his widow during her life, and upon her death directed the trustees to convey a part of the realty to Halsted. In 1867 Halsted's firm of Putnam & Halsted made an assignment for the benefit of its creditors to Smith, who was subsequently removed and gave way to Stevens. Stevens died in 1888, and the State Trust Company became the trustee in his place. In 1891 the said company sold the estate of Halsted under the said will of Newberry Halsted to Parker. The widow of Newberry Halsted was then in enjoyment of her life estate. She lived until 1904. The plaintiff complained that, as to such share devised to Halsted, demands had been made by Halsted and by Parker that any action on the part of the plaintiff as trustee necessary to be taken to place either in possession should be taken, "thus endeavoring to put the plaintiff in a position where he should determine to which one of the two the property rightfully belongs," and that by reason of their adverse claims, and the question whether any conveyance should be made by plaintiff, the plaintiff could not settle his accounts; it further appearing that he had in his hands $2,753.60 in the nature of the real estate. The plaintiff prayed for an adjudication as to these questions. Halsted, answering, asserted that he was entitled to the said fund, and alleged that the sale of his estate by the State Trust Company was illegal, fraudulent, and collusive, and that any interest which passed under the said assignment by his firm had reverted to him, and demanded judgment accordingly. Parker, answering, asserted that he was entitled to the fund by virtue of his title to the realty, which he had acquired from the State Trust Company at public sale, and demanded that he be decreed the owner of the fund and of the realty. Thus the contest was between these two defendants, of whom each had thus affirmatively submitted his claim and his rights to the court in this action. The Special Term decided that the sale to Parker was illegal, inequitable, and for a very inadequate price, and that the Cowdreys, of whom I shall write hereafter, were likewise purchasers at the said sale, although the title was taken in the name of Parker. It thereupon adjudged that

the sale was null and void, that the deed to Parker must be canceled, and that a conveyance thereof must be made by the plaintiff, as executor and trustee, to Halsted. It adjudged, on consent of Halsted, that the purchase price, with interest, should be repaid to Parker, and that he should have a lien on the lands therefor. Parker appeals from the parts of the judgment adverse to him.

I think that the judgment should be affirmed. There was evidence on the trial, not contradicted, that the realty was worth about $132,000 in 1891, the time of the sale, and from $175,000 to $200,000 at the present time. The property was sold to Parker for $2,525. Of course, it is to be remembered that the sale was only the remainder interest of Halsted. Parker admits that he then knew the property was "pretty valuable." The sale was attacked by Halsted on the theory that it was the successful consummation of a conspiracy by Parker and the Cowdreys to buy in the property for a song; that Parker, the purchaser, was disqualified, because he was a director of the State Trust Company and also the executor of the Stevens estate, quite the largest creditor of the firm of Putnam & Halsted; and that the Cowdreys were the attorneys for the State Trust Company, and one of them was the auctioneer at the sale. I do not propose to discuss either the evidence in detail or the various questions arising thereupon as to the effect of the several fiduciary relations, for I think that the affirmance may rest upon the facts that the trust company obtained the order for this sale through the Messrs. Cowdrey as its attorneys; that the auction sale was thereupon conducted by the Cowdreys, of whom one was the actual auctioneer; that the estate was thereby sold to Parker; that prior to the sale there was an agreement between Parker and the Cowdreys that, if Parker secured the property, the profits of the transaction would be divided between him and the Cowdreys on a certain basis; and that the Cowdreys were in fact the purchasers with Parker. And it nowhere appears that the trust company or Halsted knew at that time of any such arrangement. It was the duty of the trustee, through the sale thus conducted by the Cowdreys as its attorney and by one of them as auctioneer, to obtain as large a sum as possible, both for the creditors and for Halsted, for as to the latter the assignment provided:

"If any surplus shall remain of the said proceeds after the payment of all the debts due by the said parties of the first part, or either of them, the said party of the second part shall return the same to the said parties of the first part, their executors, administrators, or assigns."

It was the interest of the Cowdreys under their arrangement to sell the property to Parker for as small a price as possible, in order to enhance the profits of their and Parker's joint scheme. Pomeroy, in his Equity Jurisprudence (3d Ed., vol. 2, § 960), says:

"When an attorney has the charge of or is employed to conduct a judicial sale of property, he cannot become the purchaser, without full explanation and information given to his client of his intention."

See, too (also cited in his note), In re Boyle's Trust, 1 Macn. & G. 488; Oliver v. Court, 8 Price, 127, especially at 160, 161; Pacific R.

R. v. Ketchum, 101 U. S. 289–300, 25 L. Ed. 932, in that there was 'speculation."

It is quite immaterial that the purchase was made by Parker, so long as the Cowdreys were also purchasers with him. See In re Boyle's Trust, supra, note 1 thereto, and authorities cited.

Under the assignment, as I have shown, the assignor was entitled to any surplus, and under chapter 545, p. 618, Laws 1875, there was a reverter to him. I think, therefore, that he was entitled to assert this claim. In Zimmerman v. Kinkle, 108 N. Y. 287, 15 N. E. 409, the court say:

"The principle which justifies this conclusion was applied in the recent case of Wetmore v. Porter, 92 N. Y. 76, where it was held that whoever receives property, knowing it to be the subject of a trust and to have been transferred by the trustee in violation of his duty or power, takes it subject to the right, not only of the cestui que trust, but also of the trustee, to reclaim possession or recover for its conversion."

See, too, First Nat. Bank v. Nat. Broadway Bank, 156 N. Y. 459, 468, 51 N. E. 398, 42 L. R. A. 139; Moss v. Cohen, 158 N. Y. 240, 251, 53 N. E. 8.

There is no need to consider whether the statute of limitations is in the case and was not waived, inasmuch as the cause of action of Halsted —i. e., the right to the remainder under the will—did not accrue until the death of the life beneficiary in 1904. Gilbert v. Taylor, 148 N. Y. 298, 42 N. E. 713. See, too, Gates v. Andrews, 37 N. Y. 657, 97 Am. Dec. 764. I think that the order confirming the report of the referee in the accounting proceedings instituted by the State Trust Company after the sale is not conclusive upon Halsted. For it was not necessary that he should attack the sale in that proceeding or institute an action to avoid the final order. Mandeville v. Reynolds, 68 N. Y. 528; Ward v. Town of Southfield, 102 N. Y. 287–292, 6 N. E. 660; Warren v. Union Bank of Rochester, 157 N. Y. 259–272, 51 N. E. 1036, 43 L. R. A. 256, 68 Am. St. Rep. 777.

The court has found without exception that Halsted knew nothing of the scheme of Parker and the Cowdreys until after the death of the life tenant in 1904. There is nothing to support the contention that Halsted is chargeable with constructive notice. For aught that appeared the sale was at public auction to Parker. The share of the Cowdreys in the purchase was in no way revealed, and there was no circumstance which should have put Halsted upon inquiry. Certainly he cannot be held to such notice perforce of the record of the agreement between Parker and the Cowdreys, made after the sale and after the delivery of the deed to Parker. Halsted had no reason to consult the records, and the mere record of this agreement was not in itself notice thereof to him.

The judgment is affirmed, with costs. All concur.