County Court, Oneida County, September, 1911.     [Vol. 73.

acting as such, and, therefore, the prohibition of the section is inapplicable.

Judgment may be entered for the plaintiff for the relief demanded in the complaint.

Judgment accordingly.

---

HENRY STAPPENBECK, Plaintiff, v. FANNY MATHER et al., Defendants.

(County Court, Oneida County, September, 1911.)

Adverse possession — Necessity of hostility of claim — Tenants in common.
Aliens — Disabilities — In respect to real property — Transmission through alien.
Cause of action — Volenti non fit injuria.
Descent and distribution — Quantity of estate or share acquired — Citizen and alien heirs.
Escheat — Grounds for escheat.
Trusts — Constructive trusts — In general.

Where a naturalized citizen of this State died intestate in November, 1884, being at the time the owner of real property in this State, and leaving him surviving five brothers and a sister, two of the brothers, only, being citizens and the remaining brothers and the sister being aliens, held:

The two brothers who were citizens of the State inherited from the intestate each one undivided sixth part of said real property.

The shares of two other resident alien brothers, who died in 1880 and 1881, respectively, and neither of whom filed a deposition declaring his intention to become a citizen, escheated to the State.

As neither chapter 207 of the Laws of 1873 nor chapter 593 of the Laws of 1897 was retroactive in its provisions, the shares of the other alien brothers, who died, one shortly after the passage of the act of 1873, and the other shortly after the passage of the act of 1897, without having filed a deposition declaring the intention of either to become a citizen, also escheated to the State.

An alien non-resident sister, who died in 1878, took her share under the act of 1874, but, although no deposition declaring her intention was required of her, on her death her share escheated to the State as her son and only heir was, at the time of her death, a non-resident alien.

In the case of a non-resident brother, who has not been heard of in thirty years, upon proof of circumstances which, coupled with his not having been heard from for so long a period, raise a presumption of his death, and, no deposition having been filed by him, his share will also be held to have escheated to the State.

And where the two citizen brothers of the intestate, in 1874, after his death, conveyed to his widow the lands of which he died seized, claiming to be and describing themselves as his sole heirs at law, and the widow took possession under the deed and she and her grantees have been in possession ever since, there was an ouster of the alien co-tenants; but the possession of the widow and those claiming under her for less than forty years is not conclusive upon the State.

In such a case, where the executor of the widow assumed to sell and convey the whole title, although she was in fact vested with one undivided fourth part thereof only, the County Court is without jurisdiction to impress three-fourths of the purchase money paid with a trust in favor of the rightful owners of the remaining three-fourths of the real property, and to substitute the purchase money for the interest in the land owned by others than the widow, and to confirm a title in the vendees to the whole of the property.

And where the vendee, who brings an action for partition with a prayer for certain equitable relief in the event of certain conclusions by the court, neither alleges mistake nor fraud but seems to have gone into the transaction with his eyes wide open and fully advised of all the circumstances, a court of equity cannot give him any relief.

ACTION for partition.

W. L. & J. H. Goodier, for plaintiff.

John G. Gibson (Thomas S. Jones, of counsel), for defendant.

George Harris, executor.

Thomas Carmody, Attorney-General (Wilber W. Chambers and August Merrill, of counsel), for defendant People.

HAZARD, J. This action is for partition, with a prayer for certain equitable relief in the contingency that certain

County Court, Oneida County, September, 1911.    [Vol. 73.

decisions are arrived at by the court.   The facts with re-
ference to the matter, I think, are established as follows:—
By a warranty deed dated July 1, 1870, one Alexander
Burridge, a naturalized citizen of the United States and a
resident of Utica, purchased a certain parcel of real estate
in the city of Utica, which is the real property involved in
this action.   Said Burridge died in November, 1874, in-
testate, leaving a widow, Caroline Burridge, and seven
brothers, viz.: Robert, William, Abner, Charles, Edward
Timion and George, and one sister whose name was Frances.
Martha Hanham, who through some misconception has been
named in this action "Fanny Mather." To avoid confusion
we will continue to refer to her by the name of Fanny.
Mather.   The first two named of the brothers were citizens
of the United States.   The remaining five brothers and the
sister were residents and citizens of Great Britain.   It ap-
pears that, soon after the death of Alexander, the two citizen
brothers, Robert and William, gave a quitclaim deed of the
premises in question to the widow, Caroline.   In that deed
they described themselves as the sole heirs at law of Alex-
ander Burridge, deceased.   That deed was recorded in the
Oneida county clerk's office November 24, 1874; and it
is established clearly enough in this action that the widow
has had possession of the property ever since until her death
on December 21, 1907.   She left a will which has been ad-
mitted to probate, in and by which the defendant George
Harris is made executor and given power to sell real estate.
Pursuant to such power the executor, on the 5th day of
April, 1909, sold the property in question at public auction.
It was bid in by the plaintiff, who was the highest bidder,
for $13,300.   The executor's advertisements of the sale
contained this clause:   "Intending bidders are required to
examine title before the sale, and may apply to Mr. Gibson
for information."   The plaintiff signed a memorandum of
sale which contained this clause:   "It is understood that I
have examined the title and take the property as it is."
The plaintiff was given, by defendant Harris as executor, a
deed in the usual form of an executor's deed; which pur-
ported to convey the entire premises to him, but contained

this provision: " This conveyance is made without recourse to the party of the first part in any event."

The plaintiff took possession of the property, has spent some money in making repairs and alterations, and, although it does not appear that his title has been assailed or even questioned by any one, he has brought this action apparently to settle the title and obtain an adjudication as to his rights in and to the premises in question. He has made as defendants the brothers, Abner, Charles, Edward, Timion and George Burridge, and the sister, Fanny Mather, in every case, adding in his summons after their names, the words, " if living, and if dead, his heirs-at-law." Also he has made the People of the State of New York a party defendant. Subsequently, by order, the defendant George Harris, as executor of the will of Caroline Burridge, deceased, was brought in as a party. He has answered, as have also the People of the State of New York; but none of the other defendants have appeared or answered in the action. Very little is actually controverted by either answer, except that, in a number of instances, there are formal denials of knowledge or information sufficient to form a belief as to some of the plaintiff's allegations which, in brief, set forth the facts about as summarized above. Defendant Harris controverts the value of the premises as stated in the complaint, and alleges that the complaint contains certain propositions of law which he leaves to the decision of the court, and alleges that this court has no jurisdiction to grant the equitable relief asked for by the plaintiff as against the estate in his charge. It should be mentioned in this connection that there was made by the citizen brothers, Robert and William Burridge, an affidavit, dated November 30, 1874, the purport of which was, that they were the sole heirs at law of Alexander Burridge, deceased. The affidavit states, however, that said Alexander Burridge left him surviving five other brothers and one sister, correctly stating their names, but says that all of them are aliens, and reside in England, and never became citizens of the United States, and " that they are not legally entitled to any portion of the real estate of said Alexander Burridge, deceased, as deponent is informed the

law is." The then surrogate of Oneida county indorsed this affidavit "Approved" and signed his name; and this instrument was recorded in the Oneida county clerk's office, on December 2, 1874, just after the giving of the deed above mentioned by the two resident brothers to the widow. This instrument is set up in the amended complaint, where it is characterized as a decree of the Oneida county Surrogate's Court; and the facts with reference to that are denied upon information and belief by the defendant People of the State of New York, who also alleges that the decree was made without defendants being parties thereto, and denies the jurisdiction to make any decree which would be binding upon the defendants. The defendant People of the State denies knowledge or information sufficient to form a belief with reference to the facts alleged regarding the sale, and puts in issue the descending of the property to the brothers and sister; in fact, the answer of the People denies knowledge or information sufficient to form a belief as to most of the allegations in the complaint, but admits that the plaintiff has an estate in fee of one undivided one-fourth, which was the aggregate of the interest received by the plaintiff which originally vested in the brothers Robert and William, and alleges that the remaining three-fourths have escheated to the State. It seems to be agreed by all that the property is so circumstanced that actual partition thereof cannot be made without prejudice to the rights of the parties, and I so decide. We thus have a plaintiff who makes several claims, the first being that he is unable to state what his rights in the premises are, and asks that they be adjudicated, but who subsequently asks that, in case it is determined that his grantor was not the sole owner of the premises, the moneys paid by him to the defendant Harris, as executor, therefor be adjudged to be real estate and substituted in place of the premises above described, and asks that defendant Harris, as executor, be adjudged to hold said money in trust for the rightful owners thereof, one of which he claims to be, in certain contingencies. We have the defendant Harris claiming that plaintiff has no title whatever in or to the funds in his hands, and the defendant the People of the

State of New York claiming three-fourths of the property and an accounting with the plaintiff for rents, etc., which he has received. To unravel all of this, it becomes necessary, firstly, to consider the effect of existing statutes in connection with the alienage of the six heirs and the rights of all of the parties, commencing at the date of the death of Alexander Burridge, in November, 1874. At that time the brothers Robert and William were citizens of the United States; and their right to take at least one-eighth each is not questioned and cannot be. The point is, however, raised that, inasmuch as the other six heirs were aliens, these two brothers, being the only heirs, would take the entire estate. This is not so. Callahan v. O'Brien, 72 Hun, 216.

At the time of the death of Alexander Burridge, in November, 1874, the law with reference to aliens inheriting real estate which was then in effect was chapter 261 of the Laws of 1874, and the rights of the various heirs were fixed by that statute. That act provided as follows: " If any alien, resident of this State, or any naturalized or native citizen of the United States, who has purchased and taken, or here-after shall purchase and take, a conveyance of real estate, within this State, has died, or shall hereafter die, leaving persons, who, according to the statutes of this State, would answer the description of heirs of such deceased person, such persons so answering the description of heirs of such deceased person, whether they are citizens or aliens, are hereby declared and made capable of taking and holding, and may take and hold as heirs of such deceased persons, as if they were citizens of the United States, the lands and real estate owned and held by such deceased alien or citizen at the time of his decease. But if any of the persons so answering the description of heirs of such deceased person *are males of full age,* they shall not hold the real estate hereby made descendible to them as against the State unless they are citizens of the United States; or in case they are aliens, unless they make and file in the office of the Secretary of State the deposition or affirmation mentioned in the first section of this act."

The act was subsequently amended by chapter 38 of the Laws of 1875, which does not seem to have changed the

phraseology of the act of 1874 in any material particular. There was a further amendment, by chapter 111 of the Laws of 1877, which does not appear to have any bearing upon this case, as it seems to affect only the cases of "any citizen of this State," and provides that the title of such cannot be impeached by reason of the alienage of any person from or through whom such title may have been derived.

We have already considered the case of the brothers Robert and William, and will take up the others in order. It appears that the brother Abner died in the year 1880, and Timion in 1881. It is proven in this case that neither of them filed the depositions required of them by the statute of 1874; and, as they died before the subsequent enabling acts of 1893 and 1897, it seems clear to me that the shares of the brothers Abner and Timion escheated to the State; and I so decide.

The brother Edward died July 27, 1893. He also, it is proved, never filed any deposition, but chapter 207 of the Laws of 1893 went into effect on March twenty-fourth of that year, or about four months prior to his death, and we, therefore, have to consider the effect of that statute upon his case. Briefly, the purport of that statute was to do away with the requirement of the filing of the deposition which was required by the acts of 1874 and 1875. The case of McCormack v. Coddington, 184 N. Y. 467, decides that the act of 1893 is not retroactive, and that it applies only to cases arising after, and not before, the passage of that act. It holds that, upon the death of one who was either a citizen or a resident alien, one of whose heirs was a non-resident male, who had failed to file the deposition required by the Laws of 1874, chapter 261, at the moment of his death he had no right to hold the title and had no right to pass it on to another, and that it reverted, at once on his death and without any proceedings, to the State (p. 475). Upon the authority of this case, I think I must decide that the share of Edward escheated to the State.

It appears that the brother Charles died November 3, 1900, and that he also did not file the required deposition; but he survived the going into effect of both the statutes of

1893 and 1897. We have just decided, in the case of Edward, that surviving the passage of the statute of 1893 would not have the effect of relieving him of the filing of the deposition required by the earlier statute which was in force at the time of Alexander's death, but it remains to decide what effect the statute of 1897 might have. Chapter 593 of the Laws of 1897 reads as follows:

" SECTION. 1. Any citizen of a state or nation which, by its laws, confers similar privileges on citizens of the United States, may take, acquire, hold and convey lands or real estate within this State, in the same manner and with like effect as if such person were, at the time, a citizen of the United States; provided, however, that nothing in this act contained shall affect the rights of this State in any case in which proceedings for escheat have been or may be instituted before the passage of this act.

" § 2. This act shall take effect immediately."

· A serious question is presented by the decision in the case of McCormack v. Coddington, as to whether the act of 1897 does not come within the same category as the act of 1893, in other words, as to whether it should be held to apply only to cases which arose after the passage of that act. The decision in McCormack v. Coddington seems to turn upon the court's conception of the intention of the Legislature, they holding that the Legislature did not intend to give the statute a retroactive effect. The statute of 1897 does not seem to be considered in the McCormack v. Coddington case, although that case was decided in 1906; and the concluding paragraph of section 1 of chapter 593 of the Laws of 1897 might seem to indicate a different intention on the part of the Legislature than it was considered to have in the McCormack case. However, Stewart v. Russell, 91 App. Div. 313, holds that neither the act of 1893 nor of 1897 is retroactive; and it would, therefore, follow that the share of Charles escheated upon his death, under the decision in the McCormack case.

The sister, Fanny, not being a male, took her share which was one-eighth under the act of 1874, no deposition being required of her. She was a non-resident alien and died, in

1878, leaving as her only heir a son.  At her death the statute of 1874, as amended by chapter 38 of the Laws of 1875, was in force.  Chapter 111 of the Laws of 1877 does not seem to have any bearing, as it apparently relates only to citizens of this State, enabling *them* to take notwithstanding the alienage of some ancestors.  Her son and only heir, Frederick Hanham, was a citizen and resident of Great Britain.  No provision seems to be made for the alien heir of a non-resident alien taking, and I think her share escheated upon her death.  See Stewart v. Russell, 91 App. Div. 310; Stamm v. Bostwick, 129 N. Y. 48.

The remaining brother, George Burridge, " is supposed to be dead."  It appears from the evidence of one of his nephews that he has not been heard from for some thirty years.  The evidence is not very conclusive or satisfactory on the subject of this party's death.  It is held in numerous cases that the mere lapse of time, at least of a moderate amount of time much in excess of seven years, is not in itself sufficient to warrant a court in adjudicating that a missing man is dead. However, a number of his relatives have been sworn, and it appears that it is upwards of thirty years since he has been heard from, and that he last lived in Leominster, England. It is proven that he did not file any deposition to qualify him to hold as one of the brothers of Alexander.  The most cogent facts in connection with this question are the advanced ages of his nephews and nieces who testified, and the fact that all of his brothers and sister are dead.  As to his relative age nothing appears; his nephews and nieces and those who knew him and his brothers and sister, who have been made witnesses in this case by depositions, are all people of quite advanced age, although apparently belonging to a subsequent generation.  I, therefore, reach the conclusion that it is fair and safe to assume that George Burridge is dead; and, as he did not qualify himself under the law to take, his interest in his brother's estate, therefore, escheated.

If the foregoing conclusions are correct, the situation in November, 1874, after the death of Alexander Burridge, was that the brothers, Robert, William, Abner, Charles, Edward, Timion and George, and the sister, Fanny Mather,

were tenants in common of the premises in question, subject to the dower rights of the widow, Caroline Burridge. The first two named were citizens, and they soon after conveyed their interests to the widow, Caroline, claiming to be, and describing themselves as, the sole heirs at law of Alexander Burridge, deceased. It appears that that deed was properly recorded by the widow, the grantee. Sweetland v. Buell, 164 N. Y. 553. It thus appears that the widow took possession as grantee of the brothers Robert and William, and she and her grantees have had possession ever since; and the question is presented as to whether the acts of the two citizen brothers, Robert and William, in giving such deed under such a claim, amounted to an ouster of their cotenants, so that the Statute of Limitations may have run against them or any of them.

I think it must be held that there was an ouster of the alien cotenants, by the giving and recording of the deed to the widow, on November 24, 1874. It appears that she took possession immediately, and that her possession has been exclusive, hostile, open and notorious ever since, and that, therefore, adverse possession must commence to run from the date of her deed. See Sweetland v. Buell, 164 N. Y. 551, and cases there cited; Hamershlag v. Duryea, 58 App. Div. 288.

Having held that the six shares of the brothers and sister escheated to the State upon the death of each, respectively, and that the Statute of Limitations began to run from the date of the deed given in 1874, there remains to consider the period of limitation applicable as against the State. The plaintiff advances the theory that the ouster by the two resident cotenants of the six aliens reduced their rights in the premises to a cause of action, simply, for damages from the ouster, which is, he claims, personal property only, and that, therefore, a ten-year period of limitation would obtain. He does not cite any authority in support of either of these propositions and I am unable to find any; and I, therefore, reach the conclusion that the interest which the State took by the escheat from the several heirs of Alexander Burridge was an interest in real estate and, therefore, that it comes within

the forty-year limitation prescribed by paragraph 1 of section 362 of the Code.

If the conclusions arrived at are correct, the plaintiff is the owner of one-fourth of the real estate described in the complaint, and the State of New York the remaining three-fourths.

The plaintiff in his amended complaint has asked for the adjudication of the ownership of the parties, and equitable relief in case it may be decided that he is the owner of less than the whole. In particular, he asks, " if the court shall determine that the said Caroline Burridge was not the sole owner of said premises at the time of her death and that the said deed from defendant Harris as executor of said Caroline Burridge to plaintiff did not convey to plaintiff title to the whole of said premises, but only title to a one-fourth or other portion thereof, that the moneys paid by plaintiff to said Harris as executor, etc., for said premises and in his possession be adjudged to be real estate, and substituted in place of the premises above described as the subject of this action, and that said Harris be adjudged to hold said money in trust for the rightful owners thereof."

I do not believe that this court has jurisdiction to grant such relief. While section 340 of the Code gives to the County Court jurisdiction of partition actions where the real property is situated in the county, and section 348 says such court " possesses the same jurisdiction, power and authority in and over the same, in the course of the proceedings therein, which the supreme court possesses in a like case; and it may render any judgment or grant either party any relief, which the supreme court might render or grant in a like case, and may enforce its mandates in like manner as the supreme court," it has been repeatedly held that the County Court has no equitable jurisdiction, notwithstanding the apparently plain provisions of section 348 just quoted except such as might be *incidental merely.* Thomas v. Harmon, 122 N. Y. 84.

It seems so doubtful if the extensive equitable relief sought by plaintiff can be legitimately held to be merely an incident to a partition action, that I should hesitate about

attempting any such extensive readjustments between the parties, especially in view of the fact that, if I did, the outcome would not be a partition action at all, at least not of real estate.

Furthermore, I doubt if plaintiff has made out a case for any equitable relief, even assuming that this court has the power to grant what he asks. Neither in his pleadings nor in his proof has he shown either mistake or fraud. He doesn't even ask to have his sale rescinded, nor state any grounds why it should be. The evidence shows that he purchased this property with what should have been ample notice of a defective title. He was furnished with an abstract which clearly enough demonstrated the defects in the title. He cannot obtain relief for a mistake of law. Weed v. Weed, 94 N. Y. 243. Furthermore, he purchased property which I think it is fair to assume, from the evidence in this case, was worth at least $5,000 more than he gave for it, at the time of the sale. In short. he seems to have gone into this transaction with his eyes wide open and fully advised of all the circumstances, and I am utterly unable to see how a court of equity can give him any relief.

The plaintiff is entitled to a judgment of partition and sale in the usual form. Under the stipulation all the parties to the action may present proposed findings which will be settled by the court on any motion day on five days' notice to the other parties, accompanied by service of a copy of the proposed findings.

The defendant the People of the State of New York has asked for an accounting of the rents and profits, and I think is entitled thereto, and to have a reference to settle the same, at the proper time.

Judgment accordingly.