TONGES et al. v. VANDERVEER CANARSIE IMPROVEMENT SYNDI-
CATE, Inc., et al.

(Kings County Court. April, 1914.)

1. GUARDIAN AND WARD (§ 45*)—POWERS OF GUARDIAN—SALE OF PERSONAL PROPERTY.

An infant's general guardian had control of the infant's personal property and was responsible for its management, and could therefore assign a bond and mortgage without authority from the surrogate.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 202–205; Dec. Dig. § 45.*]

2. GUARDIAN AND WARD (§ 64*)—DUTIES OF GUARDIAN—CONVERSION OR EMBEZZLEMENT.

The assignment of a bond and mortgage by a person holding them as general guardian of her infant son, for the purpose of raising money with which to pay the debts of herself and her husband and buy a farm in the husband's name, was in direct violation of her duty.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 294–299; Dec. Dig. § 64.*]

3. TRUSTS (§ 357*)—FOLLOWING TRUST FUNDS—NOTICE.

Where parties taking an assignment of a bond and mortgage from the general guardian of an infant knew that they were the subject of a trust, that the assignment was in violation of the guardian's duty and power, and that the proceeds, even if invested in the infant's name, were to be invested in a form unauthorized by law, they took the mortgage subject to the right not only of the infant but of the guardian to reclaim possession, and could not hold it as security for the money paid the guardian therefor.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 539–552; Dec. Dig. § 357.*]

4. TRUSTS (§ 357*)—FOLLOWING TRUST FUNDS—NOTICE.

The failure of a guardian to produce a bond and mortgage assigned by her which were held by the surety on her bond should have put the assignees upon inquiry as to her right to assign such securities.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 539–552; Dec. Dig. § 357.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. MORTGAGES (§ 420*)—FORECLOSURE—JURISDICTION.

A County Court is a court of limited jurisdiction, and in an action to foreclose a mortgage has simply incidental equitable powers and cannot pass upon the validity of an assignment of the mortgage or set it aside.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1247–1252; Dec. Dig. § 420.*]

6. TRUSTS (§ 356*)—FOLLOWING TRUST FUNDS—NOTICE.

That a guardian has given a bond for the faithful performance of her duties, signed by a surety abundantly responsible to answer for her wrongful acts does not defeat the right of the infant to follow and reclaim property wrongfully transferred by the guardian.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 529–538; Dec. Dig. § 356.*]

Action to foreclose a mortgage by Henry Tonges and another, copartners, composing the firm of Tonges & Lembeck, against the Vanderveer Canarsie Improvement Syndicate, Incorporated, and others. Judgment for defendants.

Samuel F. Frank, of New York City, for plaintiff.

Oscar M. Lazrus, of New York City, for defendant Vanderveer Canarsie Improvement Syndicate, Inc.

Percy L. Klock, of New York City, for defendant general guardian.

Louis R. Bick, of Brooklyn, guardian ad litem for Mortimer V. S. MacFarlane.

MOORE, J. The defendant Vanderveer Canarsie Improvement Syndicate, Inc., made and delivered to defendant Mary Wise (now Mary Wise Ford), as general guardian of her infant son, the defendant Mortimer V. S. MacFarlane, a bond and mortgage to secure the sum of $3,000. The general guardian also held certain other mortgages representing moneys of her ward; and all of these bonds and mortgages had been deposited with the National Surety Company, the surety upon her official bond as general guardian. This was done, apparently, so that the surety company might have joint control of the assets of the estate of the ward. One hundred dollars had been paid upon the principal sum of this mortgage, leaving unpaid $2,900 besides interest.

On September 29, 1911, the general guardian, in her name as such, executed and delivered to the plaintiffs, who were copartners, an assignment of said bond and mortgage, absolute in form expressing a consideration of $2,900. The bond and mortgage were not delivered with the assignment, as the same were in the possession of the surety company, and could not be obtained, which facts were known to the assignee. The assignment was recorded October 16, 1911.

At the time the assignment was made and delivered, the plaintiffs and the general guardian as such executed another instrument, reciting that plaintiffs had advanced to the said general guardian as such $2,000 on account of said assignment. It further provided, in substance, that, if plaintiffs realized on the mortgage in excess of $2,000 with 6 per cent. interest and the cost of collecting the mortgage money, they would pay such excess to the general guardian, and that, if plain-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiffs realized therefrom less than $2,000 with 6 per cent. interest and costs of collection, the general guardian should pay the plaintiffs the deficit.

After this assignment was made and delivered, Mrs. Ford entered into an agreement with the defendant Vanderveer Canarsie Improvement Company, wherein she undertook to extend the time for the payment of said bond and mortgage to March 3, 1916. The plaintiffs were not parties to such extension.

The plaintiffs bring this action to foreclose the mortgage, claiming in the complaint the full $3,000, with some accrued interest; but, upon the trial, claim simply the sum of $2,000 and interest.

Mary Wise Ford, her husband James R. Ford, and her son the defendant Mortimer V. S. MacFarlane, came to the hotel premises of the plaintiffs in or about May, 1911, and were there, off and on, until the time in September, 1911, when the transactions above referred to occurred. They had apparently no financial means other than the moneys of the minor held by his mother as his general guardian and which was represented by certain bonds and mortgages. They occupied rooms rented of the plaintiffs, and the husband incurred a bar bill there. In addition, the plaintiffs from time to time during this period loaned small sums of money to Mary Wise Ford and her husband, sometimes furnishing same to the son; the result being that by September 29, 1911, a bill, in the aggregate amounting to $663.45, for room rent, moneys advanced, and bar bill, had been incurred, no part of which could be considered as any valid claim against the estate of the minor, Mortimer V. S. MacFarlane.

[1] At times, during this period, Mary Wise Ford undertook to negotiate one or another of these bonds and mortgages. Negotiations with the plaintiffs, relating to the $3,000 mortgage, led to the transactions of September 29, 1911. An effort was made without avail to secure from the Surrogate's Court permission to assign the bond and mortgage. How much or little of the facts surrounding the case were presented to the surrogate does not appear. Authority from the surrogate to assign the mortgage was not necessary, as the general guardian had legal control of the infant's personal property and was responsible for its management. Clare v. Mutual Life Ins. Co., 201 N. Y. 492, 497, 498, 94 N. E. 1075, 35 L. R. A. (N. S.) 1123. The parties differ widely as to what transpired relating to the assignment to the plaintiff, but the evidence warrants the conclusion that the plaintiffs, for the purpose of securing payment of the indebtedness of $663.45, no part of which was due to them from the minor or his estate, took an assignment of the bond and mortgage on the basis of it being worth $2,000; agreeing to pay to the general guardian all realized above $2,000 interest and expenses, and exacting from her an agreement to pay any deficit thereunder. Plaintiffs deducted the $663.45 and paid the balance or $1,336.55 by two checks to the order of Mary Wise Ford as general guardian; one for $100 and the other for $1,236.55. The transaction took place about 9 or 10 o'clock at night in the plaintiffs' hotel. Mary Wise Ford at once indorsed both checks, the $100 check individually and the $1,236.55 check as general guardian. Both checks

were then returned to plaintiffs, who cashed the $100 check, and $35 of that amount was thereupon paid to plaintiffs' attorney Menzel, who was present attending to the transaction, and the balance, $65, was paid to the general guardian. Plaintiffs indorsed the $100 check after Mrs. Ford had indorsed it, and it is stamped as paid by the bank on which it was drawn, on the following day, September 30, 1911.

There was a sharp dispute upon the trial as to just what occurred relating to the check for $1,236.55, but the evidence warrants the conclusion that James R. Ford and his wife were contemplating the purchase of a farm in Sullivan and Ulster counties, N. Y., and the object of assigning the mortgage to the plaintiffs was principally to secure the money necessary to buy the farm, upon the purchase price of which a payment was due the following day, September 30, 1911. That they were contemplating the purchase of this farm, and that the moneys to be realized from the assignment of the mortgage, or a large part thereof, were to be used for that purpose, was known to the plaintiffs, or at least to the plaintiff Lembeck, at the time the checks were given. Lembeck, while admitting that he knew the money was to be used to buy a farm, denies that he had any knowledge that it was to be purchased in the name of James R. Ford, or otherwise than in the name of the infant.

At the same time that the $100 check was indorsed by Mrs. Ford and returned to plaintiff Lembeck, she indorsed and returned to him the check for $1,236.55; he giving to her somewhat over $550 in cash, and she saying that she would send her son Mortimer down for the balance. Apparently the money was desired that night, because the family were going to start early the following morning for Sullivan county. The defendants introduced in evidence a deed to James R. Ford, conveying a farm of 72 acres, subject to a mortgage of $1,200 in Sullivan and Ulster counties, bearing date September 30, 1911, acknowledged October 7, 1911. On October 4, 1911, Mortimer called upon plaintiffs, and they gave him a check for $676.55 to his order, which he indorsed and returned, and in place of which plaintiffs then gave him $676.55, $350 of which he delivered to James R. Ford, and the balance or part thereof was used in paying storage on family furniture and moving same to farm.

The $1,236.55 check was indorsed by plaintiffs after being so indorsed by Mrs. Ford, and is stamped as paid October 4, 1911.

[2] It goes without saying that the assignment of this bond and mortgage to the plaintiffs by the general guardian was, under the circumstances shown, in direct violation of her duty.

[3, 4] The plaintiffs knew that the securities assigned were the subject of a trust; and that the assignment was in violation of the duty and power of the guardian. They knew, or should have known, that they could not take property of an infant in payment of indebtedness due from others. They were acting under legal advice and knew, or should have known, that they could not take lawfully invested funds of an infant, and furnish in place thereof money which they knew, even if it were invested in the name of the infant, was to be invested in a form unauthorized by law. The very fact that the bond and mortgage

were not produced should have put them on inquiry. Ought the plaintiffs to be allowed, under the facts shown here, to enforce the mortgage assumed to be assigned to them, for the full amount thereof, or for the sum of $2,000, or for any sum whatever? Under such circumstances, it would seem clear that the plaintiffs took the mortgage subject to the right, not only of the cestui que trust, but of the trustee, to reclaim possession (First National Bank v. National Broadway Bank, 156 N. Y. 459, 51 N. E. 398, 42 L. R. A. 139; Bush v. Halsted, 121 App. Div. 538, 106 N. Y. Supp. 133); that appearances were not deceptive, but suggested the true state of affairs, which worked a fraud on the infant (Rochester C. T. R. Co. v. Paviour, 164 N. Y. 281, 287, 58 N. E. 114, 52 L. R. A. 790; Smith v. Weston, 159 N. Y. 194, 199, 54 N. E. 38); and that although a portion of the consideration was paid to the general guardian, it should not stand as security for that portion (Baldwin v. Short, 125 N. Y. 553, 26 N. E. 928).

[5] This court, however, is one of limited jurisdiction, and has, in an action to foreclose a mortgage, simply incidental equitable powers. It has no power to pass upon the validity of the assignment and set it aside. Thomas v. Harmon, 122 N. Y. 84, 25 N. E. 257; Stappenbeck v. Mather, 73 Misc. Rep. 434, 444, 133 N. Y. Supp. 482.

[6] The plaintiffs argue that as the National Surety Company is surety on the bond of the general guardian, and abundantly responsible, this court is not called upon to save the infant's rights.

The fact that the guardian has given a bond for the faithful performance of her duties does not affect the character of the transaction. It has never been supposed that this fact in any way impairs the remedies open to the beneficiary of the trust, or had any other effect than to give the infant the additional security furnished by the bond. The infant could prosecute the bond or follow and reclaim the property. Fellows v. Longyor, 91 N. Y. 324, 331, 332, citing 2 Perry on Trusts, § 843; Empire State Surety Co. v. Nelson, 141 App. Div. 850, 126 N. Y. Supp. 453.

The only course open to this court is to dismiss the complaint.

The complaint should therefore be dismissed as to all defendants, with costs. Findings and judgment may be prepared accordingly.