## KELSEY v. UNION CENT. LIFE INS. CO.

(Circuit Court of Appeals, Sixth Circuit. April 11, 1912.)

### No. 2,187.

INSURANCE (§ 367*)—LIFE INSURANCE—CONSTRUCTION OF CONTRACT.

A life insurance policy provided that, after the payment of three annual premiums "except in case of failure to pay at maturity a note given for premium or for a loan," no surrender for a paid-up policy having been made, in case of default in payment of a subsequent premium, the reserve to the credit of the policy should be applied to its extension as a paid-up term policy. A further condition was that the failure to pay any notes given for premiums should avoid and nullify the policy. The insured paid four annual premiums and about three-fourths of the fifth, giving short time notes for the remaining fourth, which were past due and unpaid when he died, eight months later. The reserve was more than sufficient to pay two annual premiums. *Held* that, while the contract was susceptible of a construction by which it was forfeited, taking its provisions together and in view of the rule that forfeiture is not favored, and that any ambiguity should be resolved in favor of the insured, it was not so clear and unambiguous as to justify the court in imputing to the parties an intention to place the insured in a worse position because of his partial payment and giving of the notes for the last premium than would have been the case if he had made complete default, but that the notes referred to in such provisions must be limited to such as were given for one of the first three year premiums.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 935, 938; Dec. Dig. § 367.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action at law by Altha B. Kelsey against the Union Central Life Insurance Company. Judgment for defendant, and plaintiff brings error. Reversed.

O. G. Bailey and C. D. Robertson (Robertson & Buchwalter and Cobb, Howard & Bailey, on the brief), for plaintiff in error.

Robert Ramsey, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This was an action upon a policy of insurance for $5,000, issued October 31, 1899, on the life of Charles R. Kelsey, plaintiff's husband, "for the benefit of the insured, if living at the maturity of the policy," with the provision that:

"In case of the death of the insured prior to such maturity, said amount of insurance shall be payable, at the home office of the company, to Altha B. Kelsey, his wife, if living, otherwise to the executors, administrators, or assigns of the insured, within sixty days after the receipt of satisfactory proofs of death, the balance of the year's premium, if any, and all other indebtedness to the company being first deducted."

The policy contained the provision that "after three years' premiums shall have been paid, except, in case of failure to pay at maturity a note given for premium or for a loan upon the security" of the policy, the company would, upon surrender of the policy before default in

payment of any premium, issue a paid-up nonparticipating policy for a certain much reduced amount specified in a table attached. This stipulation followed:

"In case of default in the payment of any premium after the third, except in case of failure to pay at maturity a note given for premium or for a loan upon the security of this policy, no surrender for a paid-up policy having been made as above provided, this policy will be continued in force only as a paid-up nonparticipating term policy for such time only as one annual premium is contained in its reserve value according to the actuaries' table of mortality, with four per cent. interest. If the death of the insured occurs while the aforesaid term policy is in force, there shall be deducted from the amount insured a sum equal to the regular premiums, with interest, that would have accrued had this policy been kept in force, said deduction not to exceed three regular annual premiums with interest."

The first of the "conditions" attached to the policy reads:

"The failure to pay, if living, any of the first three annual premiums, or the failure to pay any notes, or interest upon notes given to the company for any premium, on or before the days upon which they become due, shall avoid and nullify this policy without action on the part of the company or notice to the insured or beneficiary; and all payments made upon this policy shall be deemed earned as premiums during its currency. Any and all notes, with their conditions, which may be given for premiums or loans upon the security of this policy, are hereby made a part of this contract of insurance."

The insured paid the first four annual premiums in full. The fifth premium ($205.50) was payable in advance October 31, 1903. At this time the reserve fund applicable to this policy was $470.90; and had the fifth annual premium been entirely unpaid, and had no application been made (and none was made) for a surrender of the policy and the taking of a nonparticipating policy for a reduced amount, the policy would have been continued automatically in force, under the provision above quoted, for its full face, for a period of more than two years; and, had Kelsey died during such last-named term (as he in fact did), plaintiff would have been entitled to recover the full face of the policy, less the amount of one premium of $205.50. Of the fifth year's premium due October 31, 1903, Kelsey, in due time, paid $150.50 in cash, giving for the balance his two notes of $25 and $30, payable, respectively, May 1, and June 1, 1904, each note containing the provision that:

The "policy, including all conditions therein for surrender, or continuance as paid-up term policy, shall without notice to any party or parties interested therein be null and void on the failure to pay this note at maturity. * * *"

Plaintiff's testimony that she had no knowledge of the giving of these notes, and did not authorize them, was undisputed. They were not paid, and Kelsey died on June 24, 1904. The company refused payment on the ground that the policy had become null and void by reason of Kelsey's failure to pay the premium notes referred to. The Circuit Court held the defense good, and directed verdict accordingly. The correctness of this conclusion depends upon the proper construction of this policy.

The learned counsel for defendant properly concedes that such construction must be sought in recognition of the well-settled principles of interpretation that:

"Forfeitures are not favored, ambiguous clauses are construed most favorably for the insured, and in case of repugnant clauses that favorable to the insured must be adopted." National Bank v. Insurance Co., 95 U. S. 673, 678. 679, 24 L. Ed. 563; Moulor v. American Life Ins. Co., 111 U. S. 335, 341, 4 Sup. Ct. 466, 28 L. Ed. 447; Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 136, 21 Sup. Ct. 326, 45 L. Ed. 460.

Defendant's counsel, recognizing that plaintiff had a vested interest in the policy of which she could not be divested without her consent, properly eliminates from consideration the forfeiture clauses contained in the notes signed by Kelsey, leaving the defense to stand alone upon the terms of the policy. The plaintiff is, of course, bound by the policy provisions. It is clear that, as urged by defendant, the giving of premium notes is contemplated by the contract of insurance, as shown by various provisions, to one or more of which we shall later refer. It is also true that the right to paid-up term insurance does not arise by law, but is given only by the contract. The logical and forceful argument of defendant's counsel convinces us that the contract is susceptible of the interpretation that the rights of the beneficiary to extended or term insurance are not given in case of failure to pay when due any note given for the whole or any part of any premium, although subsequent to the third. But the controlling question is whether such construction is clear and unambiguous, and is the natural and obvious one; or whether, on the other hand, the construction contended for by plaintiff is fairly and reasonably permissible, viz., that the right to term insurance was created by the payment of three premiums, and was not lost by nonpayment of the notes in question.

We appreciate the force of defendant's argument, that the contract did not bind the insured to pay the premium in cash, if he paid at all; that he acted within his contract rights in giving the notes; that, when the premium in question matured, he had the right, but could not be compelled, to take the benefit of the term-policy provision; and that by paying the premium, although in part by notes, he elected not to limit the continuance of the policy to the short term available in case of default (thus rendering it inoperative in case of death after the expiration of this comparatively short term), but chose to retain the benefit of the insurance for the full term of the policy; and that the plaintiff was bound by such election.

But we think the contract, construing all its terms together, cannot be said clearly and unambiguously to admit only of the interpretation put upon it by defendant. On the other hand, we think it fairly and reasonably susceptible of plaintiff's construction. Defendant's interpretation is not, at first view, the natural one. It requires argument and elaboration. We think a business man of ordinary intelligence and experience would construe the contract, taken together, as meaning that, after three full annual premiums had been actually paid (not paid merely by the giving of note), no forfeiture could result from nonpayment of premium which would destroy the right to a paid-up term policy automatically arising. In the first place, it would, we think, seem unnatural to expect that a right offered by the policy, and not subject to loss by complete default, should yet be lost through

partial default only. The naturalness of this expectation seems to receive more or less support from the fact that defendant's later policies (issued, however, before Kelsey's death) in terms limit the forfeiture for nonpayment of premium notes to those given for one of the first three payments. We think the interpretation just referred to would be encouraged by several considerations. For example, the indorsement upon the contract—"policy continued for full amount after three years"—would not unnaturally give the impression of a nonforfeitable right to paid-up term insurance, a sure protection for a limited period, after three premiums have been actually paid. The provision in the body of the policy for a deduction (in case of the death of the insured) of "the balance of the year's premium, if any," tends in the same direction, although the defendant urges that the provision relates only to an unpaid installment of cash premium payable, for example, semiannually or quarterly. Moreover, the mere reference to "note given for premium," contained in the clauses quoted, is not of itself sufficient to distinguish the premium there referred to as one accruing subsequent to those for the first three years; for the giving of a note for a premium is treated as a payment of the premium so long as the note is not past due. This appears not only from the clauses above quoted, but in several other ways. For instance, in the application for insurance, the answer to the question whether the premium has been paid in advance is: "Yes. Cash, $55.-50; note, $150.00." Again, the policy provides that payments for premiums are payable "on the production of the premium receipt * * * or the note given in payment of premium." The reference to a "note given for premium" might thus well refer to a note given for one of the first three years' premiums. Had it been the intention that all right to paid-up term insurance, once fully earned, should be forfeited by failure to pay any note given for any part of any premium subsequently accruing, even though not earned when death occurred, it would have been easy, and it would have seemed natural, to have so declared in language so definite and explicit as to admit no doubt of its meaning. In our opinion the terms of the policy can reasonably be so construed together as not to create a forfeiture of the existing paid-up term. The insertion of the word "such" before the word "premium" in the clause relating to paid-up nonparticipating insurance and in the first condition would necessarily lead to such construction of the clause and condition mentioned. It is true that the insertion of this single word in the clause providing for a paid-up term policy would not be sufficient to limit the provision for forfeiture to the first three years' premiums. That clause would still be repugnant to the other two clauses. But such repugnant clause, if given effect, would, no matter how far removed from actual intention, result in "setting a trap for the unwary." A construction which would produce such result should not be adopted.

In Noonan v. Bradley, 9 Wall. 394, 407, 19 L. Ed. 757, Justice Field invoked and applied the rule that:

"When an instrument is susceptible of two constructions—the one working injustice and the other consistent with the right of the case—that one should be favored, which standeth with the right."

And in Washington, etc., R. R. Co. v. Cœur d'Alene, etc., Co., 160 U. S. 101, 16 Sup. Ct. 239, 40 L. Ed. 355, Justice Shiras used this language:

"When a court of law is construing an instrument, whether a public law or private contract, it is legitimate, if two constructions are fairly possible, to adopt that one which equity would favor."

That a construction of the policy as not forfeiting the benefit of paid-up term insurance for failure to pay a note given for a part of a premium subsequent to the third is at least "fairly possible" seems clear, and that such construction is "consistent with the right of the case" and "one which equity would favor" is apparent from what has already been said.

In this case the fact exists that the cash premium actually paid was more than sufficient to carry the policy beyond Kelsey's death. It was more than three-quarters of the annual premium; and, had the benefit of the payment of premium in quarterly installments been taken, the policy would, by the construction conceded by defendant, have been payable upon Kelsey's death (at the time it actually occurred), and in full, less the amount of the unpaid installment of premium.

In construing a policy such as this, we are not greatly helped by decisions upon particular contracts, except as the reasoning of the opinions commends them. Defendant cites in support of its construction the case of Union Central Life Ins. Co. v. Buxer, 62 Ohio St. 385, 57 N. E. 66, 49 L. R. A. 737. That case involved the construction of a policy containing provisions similar to those found in the contract before us. The decision of a majority of the court in that case, if followed by us, would result in adopting defendant's construction of the policy before us. But that decision is not binding upon us (Carpenter v. Providence, etc., Ins. Co., 16 Pet. 495, 511, 10 L. Ed. 1044), and, with deference, we must say that we are not satisfied with the reasoning of the majority opinion. The construction contended for by plaintiff finds more or less support in cases such as Ferguson v. Union Mutual Life Ins. Co., 187 Mass. 8, 72 N. E. 358; Drury's Adm'x v. New York Life Ins. Co., 115 Ky. 681, 74 S. W. 663, 61 L. R. A. 714, 103 Am. St. Rep. 351, although the facts in those cases are not identical with those here.

In our opinion the plaintiff's right to the paid-up term policy was not forfeited by the failure to pay the premium notes in question, and the jury should have been instructed accordingly.

The judgment of the Circuit Court should be reversed, with costs, and a new trial granted.