ROBERT L. STEVENS et al., as Executors of FREDERICK C. STEVENS, Deceased, Respondents, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

**Insurance (life) — loans on policies — cancellation of policies for failure of insured to pay loans — what constitutes sufficient notice to borrower of intention of company to cancel policies for borrower's default to renew loans or pay interest thereon.**

Plaintiff's decedent borrowed money on five life insurance policies, as collateral, from the company which had issued them, giving promissory notes therefor, in each stating that he had deposited with and assigned to the company as collateral security one of such policies and agreeing that if he failed to repay the note or interest when due the company " without further notice and without further demand for payment may cancel said policy as of the date of default " and apply to the payment of the note and interest the sum fixed as the surrender value of the policy and pay the balance, if any, on demand to the parties entitled thereto. The borrower failed to pay the notes when due, after they had been renewed on the same terms. The company wrote him before the notes became due and on two subsequent occasions, calling his attention to the matter and requesting payment, No action was taken by the borrower and forty-five days after the notes became due they were canceled as of the date when due. *Held,* that the contract is clear and its terms unambiguous and on default the company might cancel the policies without further notice. Such cancellation became effective without notice to decedent and was not subject to the condition that he should be first paid the balance due him or informed that the company held that sum subject to his demand, nor did the company by its acts waive its right to cancel without further notice.

*Stevens* v. *Mutual Life Ins. Co.*, 183 App. Div. 629, reversed.

(Argued December 8, 1919; decided January 6, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 13, 1918, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick L. Allen* and *Murray Downs* for appellant. The defendant was not required to make any demand for payment of the loan or interest or give the insured notice of cancellation, or, having canceled, to give notice of the application of the cash surrender consideration to the payment of the loans, or that there was a surplus. (*Clare* v. *Mutual Life Ins. Co.*, 201 N. Y. 492; *Palmer* v. *Mutual Life Ins. Co.*, 38 Misc. Rep. 318; *Frese* v. *Mutual Life Ins. Co.*, 11 Cal. App. 387; *Fountain* v. *Security Mutual L. Ins. Co.*, 93 S. E. Rep. 118; *Eagle* v. *N. Y. Life Ins. Co.*, 48 Ind. App. 284; *Wilson* v. *R. M. L. Ins. Co.*, 137 Iowa, 184; *Ruane* v. *M. L. I. Co.*, 186 S. W. Rep. 1188; *Cilek* v. *N. Y. Life Ins. Co.*, 95 Neb. 275; *Salig* v. *U. S. L. I. Co.*, 236 Penn. St. 460; *Mills* v. *National Life Ins. Co.*, 136 Tenn. 350.) The Appellate Division was in error in holding that the defendant had waived its right to cancel the policies without demand and notice. (*Fowler* v. *Met. Life Ins. Co.*, 116 N. Y. 389.) Payment of surplus to Stevens was no part of the cancellation. (*Lockwood* v. *N. Y. L. Ins. Co.*, 175 App. Div. 24; 223 N. Y. 714.)

*Louis L. Babcock* and *Robert S. Stevens* for respondents. All the acts performed by the defendant in the way of attempting to cancel the policy were inefficacious since the notices of cancellation and the checks were not even mailed prior to Mr. Stevens' death. (*Van Valkenburgh* v. *Lenox Fire Ins. Co.*, 51 N. Y. 465; *Tisdell* v. *N. H. F. Ins. Co.*, 155 N. Y. 163.) The evidence in the case shows that the appellant did not elect within a reasonable time to cancel the policies. On the contrary, it elected to continue the policies in force and communicated this intention to the insured. (*Modern Woodmen* v. *Vincent*, 40 Ind. App. 711; *G. F. Ins. Co.* v. *Michael*, 167 Ind. 659; *Croft* v. *New Zealand, etc., Co.*, 6 H. L. Cas. 705; *Bailey* v. *American Deposit Co.*, 52 App. Div. 402; 165 N. Y. 672; *Insurance Co.* v. *Norton*, 96 U. S. 234.)

ANDREWS, J. On May 16, 1914, Frederick C. Stevens held five paid-up life policies issued by the Mutual Life Insurance Company. On that day he borrowed from the company $1,837 on each policy and executed five notes in each promising to pay that sum and interest on January 24, 1915, and in each stating that he had deposited with and assigned to the company as collateral security one of such policies and agreeing that if he failed to repay the note or interest when due the company " without further notice and without further demand for payment may cancel said policy as of the date of default " and apply to the payment of the note and interest $1,920, fixed as the cash surrender value of the policy, and pay the balance (if any) on demand to the parties entitled thereto. The notes also provided that upon request and upon the payment of interest the time for their payment might be extended for six months or one year. If that was done the same provisions for cancellation were applicable except that the amount fixed for the cash surrender value might be increased.

On January 24th, 1915, all interest was paid and the loan extended to January 24th, 1916. At some time, apparently prior to that date in view of the language used, five notices were sent to Mr. Stevens, each stating that the loan and interest would be payable on January 24th, and asking him, if he wished to continue the loan, to remit the interest. The notices also contained certain statements not applicable to paid-up policies. No attention was paid to these notices and no payments made. The company did not, however, at once cancel the policies. As thirty days' grace is allowed for the payment of premiums, its custom is said to be to allow the same privilege for the payment of interest and fifteen days in addition so as to enable it to hear from distant points and make certain that no payments have in fact been made. Instead on February 12th it wrote to Mr. Stevens on what were evidently forms relating to the

non-payment of premiums that interest on each loan "will expire on January 24, 1916," and that it trusts he will remit "before that time * * * that the insurance may not lapse" the interest and forty-six cents which was evidently compound interest from January 24, 1916. It further stated that unless a remittance was received before the date of expiration, restoration of the insurance would be subject to certain conditions, and asked Mr. Stevens to give the matter his prompt attention. Still nothing was done and on February 28th five other letters were sent by the company. Like the last they were a clumsy attempt to adopt a form letter as to premiums to the circumstances surrounding the loans. They each notified Mr. Stevens that he had allowed his "policy to lapse" by default in the payment of interest. They then discussed matters in terms not appropriate to paid-up policies. But they say that a policy is too valuable an asset to be cast aside and ask Mr. Stevens to take up the matter of restoring those issued to him. Finally a note at the end distinctly gives the number of the policy referred to, states that it is paid up and that $110.22 interest on a loan was due January 24th, 1916. Once more no notice was taken of these letters and on March 9th the company canceled each policy by pasting upon it a cancellation slip as of January 24th, 1916. On the 13th the company wrote him that each policy had been canceled because the loan had not been paid or renewed, gave a statement of the transaction and inclosed a check of $28.78 on each policy, being the balance due. These letters and checks were forwarded to the defendant's agents at Washington and were there mailed to Mr. Stevens at his home in Attica, before his death, which occurred suddenly on the 14th. They were not received, however, until afterwards, and the checks were then returned to the company by his executors. These executors now claim that they are entitled to the face value of the paid-up policies less the amount due

on the loans. To recover that amount this action is brought.

The trial court directed a verdict for the plaintiffs on the ground that the cancellation of the policies did not become effective until notice thereof reached Mr. Stevens and until he was either paid the balance due or was informed that the company held that sum subject to his demand. The Appellate Division did not adopt the reasoning of the trial judge but affirmed his action on the ground that the company had waived its right to cancel without further notice of such intention. We think the action cannot be maintained on either theory.

The contract is clear. Its terms are not ambiguous. On default, the company may cancel the policy without further notice or further demand. This cancellation is the basis for further action. After it, but necessarily only after it has been effected, the company applies the surrender value of the policy to the payment of the note. If any balance remains it will pay it to the borrower on demand. The provisions are independent. They do not resemble those in fire policies where the manner in which cancellation may be effected is prescribed. Here the borrower expressly agrees that the cancellation may be made without notice by the action of the company. Such an agreement is not illegal. (*Clare* v. *Mut. Life Insurance Company*, 201 N. Y. 492.) Nor is it inequitable. The borrower knows when the loan is due. He knows the privilege he has conferred. He knows it will generally be to the advantage of the company to enforce the cancellation. It is for him to ascertain if cancellation has been effected because of his default and if so to demand any balance that may be due to him. In most banking loans on collateral the bank reserves the right to sell the collateral on default or to retain it itself at a fair value and apply the proceeds on the loan. Any balance due belongs to the borrower. But it has never been held

that the transaction is not closed until notice is given
that such a balance is in its hands.

As we have said, the time of payment of the notes was
extended until January 24th, 1916. The evidence of
interest payments and the statements of plaintiffs' coun-
sel show this fact beyond a doubt. If so, a mere delay
of forty-five days in canceling the policy is immaterial.
Nothing in the collateral note required the company to
exercise its option to cancel on the very day it became
due. The agreement expresses the contrary intent. The
cancellation is to be made " as of the date of default."
This implies action subsequent to that date. It is true
the delay might be so great as to permit an inference of
fact that the company had made an election not to cancel.
Once made the insured might rely upon such election,
and cancellation would require reasonable notice and
demand. But such a delay as here occurred would not
of itself permit such an inference.

Is there anything in the letters and notices that
requires a different result? If the company extended
indefinitely ·the time for the payment of the principal
and interest, or ·if because of its actions the insured was
justified in believing such an extension had been granted
and failed to make required payments relying on such
a belief, again no cancellation could be had without
reasonable notice and demand.

The defendant does not appear to have knowingly and
intentionally extended the time. Nor do the letters and
notices justify a belief on the part of Mr. Stevens that
such an extension had been granted. He was a business
man and had been a banker. We must infer in him a
reasonably intelligent appreciation of the meaning of
them. The first simply informed him that his loan
would become due on January 24th, 1916, and that
some action on his part was required if it was to be
extended. Certain provisions on the back cf this paper,

34

referring to loans on ordinary policies and to extensions of loans if premiums were promptly paid, he knew did not apply to him. From that of February 12th the most that he could infer was that although in default he might still be permitted, if he acted immediately, to pay his interest as of January 24th and so obtain an extension. The word " lapse " was inappropriate, but a business man, as was Mr. Stevens, could not have understood he was given an indefinite time within which to make his payments; and that good faith, therefore, required a further notice before cancellation was enforced. The letter of February 25th was entirely unfitted to the circumstances; but at least it was a clear notice that the policies were no longer in force and that further negotiations were required to restore them. Finally, there is no direct evidence that Mr. Stevens understood an extension was granted him and no facts appear from which the inference may be drawn either that he so believed or that he relied on such belief. The truth probably is that he intended to allow his policies to be canceled so as to pay his notes.

As we find no question of fact to be submitted to a jury the judgments of the Trial Term and of the Appellate Division should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., HOGAN, CARDOZO, MCLAUGHLIN and ELKUS, JJ., concur; POUND, J., not voting.

Judgments reversed, etc.