JOHNSON v. PENN MUT. LIFE INS. CO.
No. 18934.

District Court, N. D. Ohio, E. D.
May 4, 1938.

George E. Beach, of Cleveland, Ohio, for plaintiff.

George D. Bonebrake, of Cleveland, Ohio, for defendant.

WEST, District Judge.

This action is brought by plaintiff, the divorced wife of John A. W. Prout, insured in one of defendant's policies for $5,000 issued July 14, 1913, payable to Albert H. Prout, father of the insured, and became fully paid prior to the insured's death on March 7, 1936. Plaintiff sues as the owner of said policy under an alleged assignment from the insured dated December 8, 1914, and also claims as the designated beneficiary of the policy. The defense is based on an alleged forfeiture of the policy for non-payment of a loan thereon as evidenced by a so-called certificate of indebtedness for $2395 dated September 18, 1931, executed by the insured only and to which the plaintiff never consented. Jury was waived and the matter submitted to the court.

■ Plaintiff's claim, as I see it, depends upon the effect of the alleged assignment of December 8, 1914. In the opinion of the court this document did not constitute an assignment, but was merely a change of beneficiary, made by the insured under the provisions of the policy, and under it plaintiff took only the rights of a beneficiary so named.

True the document recites that the insured sells and assigns all his rights in the policy to the plaintiff, then his wife. But it designates her as the beneficiary, conditions her rights upon outliving the insured, and specifically provides that the insured retains full power "to change the said beneficiary or surrender the policy to the company at any time, this to be done by instrument in writing under the insured's hand and seal to be recorded at the home office of the company". Upon its face the document should be regarded as a change of beneficiary rather than an absolute assignment, and this construction is fortified by the fact that the insured there-

after on October 26, 1927, executed a further designation of beneficiary by which he made the policy payable to his executors, administrators or assigns, reserved the right to make a further change, which he carried out by again designating his wife as the beneficiary on November 1, 1927, in which document he again reserved the right to make a similar change; and by the terms of the certificate of indebtedness which first effected another change of beneficiary, again to the insured's executors, administrators or assigns, and then assigned the policy to defendant as security for the loan, after which and at the conclusion of the certificate the former beneficiary, i. e., his wife, was reinstated as such, but subject to such indebtedness.

■ It seems perfectly clear when the evidence touching the point is considered, that these various steps subsequent to the alleged assignment to the plaintiff were taken by the insured in connection with loans on the policy, each of which was preceded by making his estate the beneficiary, in order that any assignment made to secure a loan, for example, the assignment of September 16, 1931, embodied in the certificate of indebtedness, would become fully effective without the consent of the wife, the previous beneficiary. And that the insured could not have intended the document on which plaintiff's claim mainly rests, to have been an assignment of the policy to her. If this be true, then plaintiff being only the designated beneficiary, at the date of the last loan and later when the alleged forfeiture took place, has no equity or rights in the policy paramount to the defendant's rights under the assignment securing such loan. The certificate of indebtedness executed by the insured specifically made the rights of the beneficiary "subject to this indebtedness"; nor under the terms of the policy was her consent to the loan required.

■ But plaintiff, though not pleading estoppel in her reply, contends in the brief that defendant is estopped because of its failure to furnish her copies of the original assignment from the insured to his father, Albert H. Prout, the assignment from the latter and the insured to the insured's estate made on December 7, 1914, and of the alleged assignment from the insured to the plaintiff on December 8, 1914, from claiming the benefit of any such documents. This contention is based on Gen.Code Ohio, §§ 9387, 9388, and 9389.

Passing all other questions, these statutes have no application. The first relates to documents "upon which such policy was issued, or which may affect its validity"; and the second section relates to "papers mentioned in the next preceding section". None of the assignments, etc. mentioned are within such statutes, for the policy was not issued upon any of them, nor did they affect its validity. No question of the validity of the policy is made in this case.

Sec. 9389 relates to the same class of documents and in addition is intended to bar defendant from setting up "any incorrectness or want of truth of such application or other document" as a defense. The defendant merely insists upon the so-called assignment of December 8, 1914, being given its correct interpretation and meaning, and is not relying upon either its incorrectness or want of truth.

Gen.Code Ohio, § 11554, providing how copies of documents upon which a defense is founded shall be secured prior to trial, is also mentioned in the brief. But as that section "does not apply to a paper, a copy of which, as required by law, is filed with a pleading", and the plaintiff embodied in her exhibit attached to the petition a copy of the alleged assignment on which she claims, while defendant attached a copy of the certificate of indebtedness to its amended answer, the section has no practical force here.

■ Plaintiff further relies on Gen. Code Ohio, §§ 9393, 9394, 9395, 9398, and 9399, as these sections formerly stood. She contends that under them, especially Nos. 9394 and 9398, she had a vested right in the policy by assignment of December 8, 1914, or if not in this manner, at least because she is a married woman to whom the policy was made payable through the change of beneficiary provided for at the close of the certificate of indebtedness. The purpose of the statutes is mainly to protect dependents from claims of creditors of the insured. But they do not apply to policies which have been properly forfeited either for nonpayment of premiums or failure to repay a loan on the policy. Sec. 9394 relates only to policies "which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children * * *". And Sec. 9398, while possibly broad enough to include a policy payable to a married woman through a change of beneficiary, merely recites that such policy "shall inure to her benefit" free of creditors' claims.

There is not the slightest indication that either of these or any of the other sections mentioned were intended to apply to a policy which never matured because duly forfeited for any proper reason.

The two cases cited: In re Weick, 6 Cir., 2 F.2d 647, and Reakirt v. Besuden, 3 Ohio N.P.,N.S., 646, affirmed 73 Ohio St. 383, 78 N.E. 1118, without opinion, do not involve forfeited policies. In the opinion at page 649 of 2 F.2d in the Weick case, the fact that Sec. 9394 applies only to policies which may mature is mentioned; and the second case involved an assignment to a wife and not an interest conferred by change of beneficiary. Neither has any application.

■ Whether assignee or beneficiary, the plaintiff was bound by the terms of the policy. In Union Central Life Ins. Co. v. Buxer, 62 Ohio St. 385, 57 .N.E. 66, 49 L.R.A. 737, after discussing the right of the wife of insured, who had a vested interest in the policy, to stand upon its terms and conditions, unaffected by a forfeiture clause in a premium note, broader and more onerous than provided in the policy, the court say, 62 Ohio St. at page 391, 57 N.E. at page 68, 49 L.R.A. 737: "But, while he could not thus affect her interest without her consent, she was equally bound with him by the terms and conditions of the policy * * *. The insurance was primarily for his benefit * * * and only contingently for her benefit in case he should die before its maturity. In such cases he may do whatever the terms of the policy authorize, without coming in conflict with the authorities as to the inability of the insured or the company to change the vested rights of the beneficiary." The policy was taken out originally for her contingent benefit.

In Kelsey v. Union Central Life Ins. Co., 6 Cir., 196 F. 195, at page 197, involving a somewhat similar situation, Judge Knappen said: "The plaintiff is, of course, bound by the policy provisions."

■ Here Sec. VII of the policy, relating to loans, binds the company to advance "on proper assignment of the policy and on the sole security thereof * * * a sum at the option of the insured * * * equal to or less than the full reserve at the end of the current policy year on the policy

and on any dividend additions thereto * * *. There shall be deducted from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year, and interest shall be payable in advance on the loan to the end of the current policy year. Failure to repay any such loan or advance or to pay interest shall not void the policy, unless the total indebtedness thereon shall equal or exceed such loan value at the time of such failure, nor until one month after notice shall have been mailed by the company to the last known address of the insured and to the person to whom the loan was made and of any assignee of record at the home office of the company."

The clear and inescapable implication from the language above, beginning "unless the total indebtedness thereon", is that failure to repay the loan with interest, as stated, voids the policy. The certificate of indebtedness executed September 16, 1931, by the insured by its first recital changed the beneficiary to the insured's estate. After providing for the assignment to the defendant as security for the loan and fixing the rate of interest and date of payment thereof and of additions to principal, it proceeds: "it is understood and agreed: 1. That if at any time additions of unpaid interest cause the total indebtedness against the above policy to equal or exceed its total loan value, the company's liability shall automatically terminate."

The final clause reinstates the plaintiff as beneficiary and makes the arrangement "subject to this indebtedness".

The plaintiff as beneficiary is bound by the provision of the certificate above quoted respecting termination of the policy.

Plaintiff claims that the notices of September 18, 1935, Ex. D, stating the amount due, and of October 24, declaring the forfeiture, the latter being sent to both the insured and the plaintiff, were insufficient. But they appear to be in proper form and timely. See Gen.Code Ohio, § 9421.

She also thinks it doubtful whether they were actually sent because supported by evidence of the routine practice of the company. The evidence of mailing is entirely sufficient.

Further, it is said the record shows that the insured was under guardianship at one time and consequently notice should have been sent in care of his guardian. But it also appears that on September 23, 1935, when, according to the brief of the plaintiff, "Prout had just recently had his guardianship lifted", he wrote a very lucid letter to the company. And other evidence shows that he was looking after his affairs and perfectly competent at the date of the notices. On October 24, 1935, over a month after the notice of September 18, 1935, defendant by letter, Ex. E–I, notified the insured that the total indebtedness against the policy equalled its total cash value and the policy had become void in accordance with its terms. The notices were all mailed to 1320 Williamson Building at Cleveland, which was the last known address of the insured. Oral testimony of employees of the defendant satisfies me that the insured was duly notified and fully cognizant of the situation, and no sort of advantage was taken of him. The plaintiff, being beneficiary only, was not entitled to any of these notices, though a copy of the forfeiture notice of October 24 was sent to her.

It is also contended for plaintiff that a paid up policy is non-forfeitable for failure to pay interest on a loan which it secures. To this, 3 Couch on Insurance, p. 2101, § 649, is cited. There are some expressions to that effect in the authority, and there is also the following: "Again, the right of an insurer to cancel a paid up life insurance policy for the nonpayment of a loan is generally sustained under loan agreements giving the insurer a right upon default to cancel the policy and apply the surrender value to the satisfaction of the loan and pay the balance to the insured, provided the surrender value allowed by the insurer is the actual cash surrender value and not one arbitrarily fixed by it." Certainly the very great weight of authority favors the latter position. See annotation to Stevens v. Mutual Life Ins. Co., 227 N.Y. 524, 125 N.E. 682, 18 A.L.R. 1141, 1145.

Gardner v. Union Central Life Ins. Co., C.C., 5 F. 430, 433, cited by plaintiff, is not to the contrary. For in the opinion it is said: "It would seem clear that the parties to this paid-up policy regarded this sum of $403 as a loan, and they made no provision for the forfeiture of the policy for the non-payment of the interest thereon." Of course the policy must provide

for the forfeiture; in that case it did not, while here it does.

Kelsey v. Union Central Life Ins. Co., supra, is cited by plaintiff. But it is not applicable, for there is here no question of ambiguity that can be resolved in favor of the plaintiff in order to avoid the forfeiture.

It is contended by counsel for plaintiff that on July 14, 1935, the date on which the loan value and indebtedness were computed, there was a cash value of $62.90 in the policy which under its terms should have been added to the principal and the loan carried for another year before it could be forfeited.

This is based on the statement found in defendant's letter of September 18, 1935, that the amount of interest and overdue was then $136.38, the loan value was not sufficient to permit addition of the entire sum to the principal, but if the insured would remit at least $20.73, the balance could be settled by increase in principal. This is said to show that the difference of $115.65 represents the increase in cash value of the policy on July 14, 1936, over its value on September 18, 1935. And that otherwise defendant would not have permitted a settlement by payment of $20.73. But the conclusion does not at all follow. The settlement in mind was not a satisfaction of the entire interest claimed to be overdue, but payment of only a small part of it, the balance being "settled" by being added to the principal amount due on July 14, 1935.. There was no relation between the sum to be added and the next year's increase in cash value. Defendant's actuary testified that in fact such increase was but $50.75, and that on July 14, 1935, the policy had no cash·value over and above its indebtedness. This is not, as plaintiff's counsel contends, in any manner contradictory of the letter of September 18, nor is evidence of the increase in cash value material, as the policy was not continued in force.

Plaintiff rightly says that unpaid interest may be added to principal only on the anniversary dates of the policy, in accordance with Sec. VII thereof. And Exhibit G, the computation furnished by defendant, with the oral evidence, shows that additions of interest were only made at those times. In this connection plaintiff cites Roeser v. National Life Ins. Co., 115 Pa.Super. 409, 175 A. 887. This case merely holds that policy requirements relating to dates on which interest on a loan becomes payable are to be observed, and no forfeiture can be declared for failure to pay interest before it falls due. The Insurance Company in that case calculated interest up to a date several months in advance of the anniversary date, and the court held this could not be done, but said, 115 Pa.Super. at page 413, 175 A. at page 889: " * * * the company, experienced in such matters, should have provided for such a contingency in clear and unequivocal language or required the interest to be paid in advance."

In the present case interest at 5% is payable on the principal in advance and if not so paid, is itself subject to interest at the same rate. Gen.Code Ohio, § 9420, authorizes advance interest on the loan. When overdue, interest either on principal or on interest is added to principal, and the aggregate becomes principal at the next anniversary date, upon which, if the policy is to be continued in force, interest then becomes payable. The uncontradicted evidence shows that on July 14, 1935, there was due from the insured on the loan $2,692.57, while the cash value of the policy was $2,671.85; the indebtedness exceeding the loan value by $20.72 at this anniversary date. This indebtedness did not include interest on the loan for the next year. The amount of interest overdue, $136.38, mentioned in the letter of September 18, included $134.63, advance interest on the principal sum due July 14, 1935, together with $1.75, interest thereon to September 18. The insured was very properly notified that because of insufficient loan value in the policy (such insufficiency being $20.72), the entire interest and overdue could not be added to principal, but that if $20.73 were paid, the balance might be so arranged. The odd cent is explained in the evidence.

Even if it were improper to compute interest on unpaid interest, there would still be an excess indebtedness on July 14, 1935. For it appears that on that date the amount of such interest entering into the loan was $18.75, an additional sum of 93 cents representing interest on the unpaid interest, $134.63 from July 14 to September 18, making the total $19.68. At page 64 of the transcript there is an evident error, the witness saying that on July 14, 1935, the loan value exceeded the guaranteed value by $20.72.

One examining this record is likely to be confused by the evidence on pages 14 to 20. But when it is understood that the computations found there relate to loans on the policy in suit and also on policy No. 624,873, the difficulty is cleared up. The witness Stevens explained that during his examination he tore from Exhibit G the part of the second page on which the computations of the loan on the other policy appeared. So that Exhibit G relates only to computations of the loan, interest, dividends, etc., on the policy in suit, though its heading includes the other policy as well.

So far as I am able to see, the defendant was justified in forfeiting the policy and proceeded strictly in accordance with its provisions and the provisions of the statute on the subject, Gen.Code Ohio, § 9421. And I think this appears from the uncontradicted evidence in the case. At the conclusion of the testimony defendant moved for judgment in its favor, which motion was then taken under consideration, and is now sustained, to which the plaintiff may have an exception.

Findings of fact may be prepared and submitted by counsel for defendant, and judgment will be entered dismissing plaintiff's petition at her costs.