The action is upon a policy of insurance issued by the defendant, which insured the life of the plaintiff's mother for his benefit in the sum of $3,000. The defense to the action was, principally, that the policy had been cancelled and all obligation of the defendant thereunder satisfied. Findings were made by the trial court, in its decision of the issues, which were based upon a stipulation of the parties as to the main facts. In substance, these were the facts as found. Mrs. Clare, the plaintiff's mother, in January, 1900, took out a paid-up policy of insurance, whereby the defendant promised to pay the sum of $3,000 to the plaintiff, if living at her death, and, if not living, then, to her executors, administrators, or assigns. She died in December, 1906, from a cause not *Page 495 
excepted in the policy. In January, 1901, a year after taking out the policy, she had applied to the surrogate of the county of New York for authority to assign and pledge it as security for a loan of money. In her application, she stated that the plaintiff was an infant over fourteen years of age; that she had been appointed his general guardian; that his only property consisted in his interest in the policy; that she was in straitened circumstances and unable to educate her son as a dentist without outside aid; that the defendant had agreed to loan to her the sum of $617 upon the policy, and that that sum would suffice for the necessary maintenance and education of her son. The application was granted by the surrogate and Mrs. Clare was authorized, as general guardian, to assign, surrender and pledge the plaintiff's interest in the policy and to use the amount received for his benefit. The making of the loan by the defendant was conditioned upon her obtaining such an order. Thereafter, Mrs. Clare made an agreement with the defendant, in the usual and only form that the latter used in loaning upon its policies, whereby the latter agreed to loan the sum of $617 for one year and she assigned her interest, individually and as guardian, in the policy as collateral security for the payment of the loan. The company, in the event of default in the payment of the loan when due, was authorized "without notice and without demand for payment to cancel said policy and apply the customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, namely $617, to the payment of said loan with interest." The loan was not repaid on the date fixed and the finding is that "thereupon this defendant surrendered said policy and applied the customary cash surrender consideration then allowed by the company for the surrender of similar policies, which was at that time the sum of $617, to the payment of said loan and thereupon canceled said policy." It was found that Mrs. Clare and the defendant had acted, each, in good faith. The plaintiff came of age in 1906, some months before his mother died. At the time of making the *Page 496 
loan, she was a widow, thirty-eight years of age. Upon these facts, the trial court reached the conclusion that the plaintiff had no legal claim against the defendant upon the policy and that his complaint should be dismissed on the merits. The judgment thereupon entered was unanimously affirmed at the Appellate Division and upon this appeal the plaintiff contends, as he did below, that his guardian had no right to enter into such an agreement and that the surrogate had no power to authorize it. If the determination of the issue between the parties were to depend, solely, upon the surrogate's power to authorize the plaintiff's mother and guardian to enter into the agreement, I should have no doubt but that it was ample. The Surrogate's Court is empowered by the statute to direct and control the conduct of the guardians of infants and, upon the petition of the general guardian, to make an order directing the application of the infant's property to his support and education out of income, or, if the income is inadequate, out of principal. (Code Civ. Proc., secs. 2472, 2846.) But it is not necessary to decide the question whether the Surrogate's Court had the power to authorize the agreement. It was not essential that the plaintiff's guardian should have been authorized by its order to enter into it. In applying to the surrogate, she complied with the defendant's request and, doubtless, that originated in the cautious policy of defendant's officers. As the general guardian, she had ample authority to make this disposition of the personal property of her ward. It was a matter within the province of her judgment and if its exercise was with due regard for her ward's interest, it was justified. As the facts are established, they exhibit such a case. We have the necessities of the youth desiring to be educated in a profession; the existence of but one source from which to derive pecuniary aid, in his contingent interest in the policy upon his mother's life; her inability to provide means and her willingness to surrender her own interest in the policy; a loan, presumably, from the only person willing to lend upon the present value of the policy upon its pledge, and a loan agreement, in the form commonly used by the defendant *Page 497 
in such cases, securing repayment by a provision that the surrender value of the policy might be resorted to in satisfaction of the loan. With these facts, and with the parties acting in perfect good faith, the act of the guardian could not well be questioned and, certainly, the defendant subjected itself to no liability to the infant. Mrs. Clare, as the general guardian, had the same powers that a testamentary guardian would have had and they extend, not only to the custody, but to the management of the ward's personal estate. (Wuesthoff v.Germania L. Ins. Co., 107 N.Y. 580; Chapman v. Tibbits, 33 ib. 289; Dom. Rel. Law, sec. 82.) The right of the guardian to resort to the principal of the ward's estate, if to the latter's advantage, has long been recognized. (Matter of Bostwick, 4 Johns. Ch. 100, 105; Hyland v. Baxter, 98 N.Y. 610.) The legal control of the guardian over the personal estate of the infant is absolute, within the bounds of a discretion guided by an honest judgment of what his best interests require. In Field
v. Schieffelin, (7 Johns. Ch. 150), the guardian sold and assigned a bond and mortgage, belonging to his ward's estate, before the bond was due and the chancellor upheld the transaction as within the exercise of the guardian's discretion. Holding the discretion to be duly exercised if money was wanting for the better maintenance and education of the ward, "or for any purpose whatever, connected with the faithful discharge of the trust," he observed that "the necessity or expediency of the measure rested entirely in the judgment and discretion of the guardian. He was, as between him and the purchaser, the proper and the exclusive judge of that expediency. * * * Though it be not in the ordinary course of the guardian's administration, to sell the personal property of his ward, yet he has the legal right to do it, for it is entirely under his control and management, and he is not obliged to apply to this court for direction in every particular case." (p. 153.) The authority of this case was followed by our Supreme Court, in Tuttle v. Heavy, (59 Barb. 334), and by the United States Supreme Court, in Maclay v. Equitable LifeAssur. Society., (152 U.S. 499); *Page 498 
a case much in point. In Chapman v. Tibbits, (supra), this general power of the guardian to manage the personal estate of the ward was recognized, as distinguished from the limitations upon its exercise in relation to the real estate. The Code of Civil Procedure regulates the power and authority of the Surrogate's Court, with respect to general guardians, by the manner of their exercise by the Court of Chancery. (Sec. 2821.) Whether, therefore, we regard the nature of the office of a general guardian under our statute, or the rule of the Court of Chancery, as asserted by the chancellor, in the case cited, there is no difficulty in concluding that this plaintiff's guardian had all the power required to agree with the defendant as she did, without recourse to the surrogate. She had that legal control of the infant's personal estate which, in the absence of bad faith, was indisputable. She was accountable for her management; but, as to third persons, her acts were valid, if not affected by any collusive fraud.
The question of the surrender value of the policy is not here. The finding upon the subject is explicit and is based upon the stipulation and there is no request to find otherwise. Nor is there any doubt but what the guardian could agree to waive notice and demand of payment. The subject of the contract was a non-negotiable chose in action and not a chattel, and the plaintiff's interest in the policy was a peculiar species of property. The defendant was not bound to maintain the policy, upon the non-payment of the amount of the loan; which equalled its surrender value. The effect of the agreement was to provide for a method of realizing upon the policy and there can be no legal objection to such an agreement by the guardian. It is always competent for parties to agree between themselves that, in a transaction of loan, notice and demand may be dispensed with.
I think that the judgment was right and that it should be affirmed.
CULLEN, Ch. J., HAIGHT, VANN, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur.
Judgment affirmed, with costs. *Page 499