FRANK H. KIMBALL *v.* NEW YORK LIFE INSURANCE COMPANY.

November Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 11, 1924.

*Insurance—Loan Agreement—Validity of Stipulations as to Policy Pledged as Security for Loan—Provision as to Waiver of Demand and Notice of Liquidation of Loan—Demand and Notice Immaterial in View of Contract—Provision in Contract Making Reinstatement Condition Precedent to Repayment of Loan After Lapse of Policy—Correction of Indorsement as to Extended Insurance—Estoppel—Presumption as to Reliance on Representations Made—No Presumption of Reliance on Indorsement as to Extended Insurance, so as to Estop Insurer From Showing Mistake Therein, Until Proof of Action or Refraining ·from Action—Printed Notice on Policy Emphasizing Insured's Right to Rely on Indorsement Not Sufficient to Estop Insurer from Setting Up Mistake— Questions Not Raised Below Not Considered in Supreme Court—Instruction Relating to Indorsement Concerning Extended Insurance—Exception Must Fairly Apprise Trial Court of Claimed Error—Reargument of Questions Previously Considered by Supreme Court—Judges—Supreme Court Justice Sitting in Reargument of Case with Tacit Consent of Parties, Not Prevented from Consideration and Determination of Case Because Not Present at Original Hearing.*

1. In a loan agreement, when insurance policy is pledged as sole security for a loan from insurer to insured, stipulations relating to the disposition of pledge and application of proceeds, which are not obnoxious to law and do not result in penalizing pledgor for his default, are generally upheld.

2. The provision in a loan agreement that if the loan became due through failure of insured to pay premiums on policy when due, the loan should be "satisfied in the manner provided in said policy," without demand or notice of any kind, which were expressly waived, does not violate insured's rights under the policy, where there was no other provision of the policy requiring demand or notice as a prerequisite to the liquidation of the policy when terminated, the policy read as a whole negativing such requirement, and insured knowing when policy would terminate by non-payment premium, and that the loan thereupon became due.

3. In action on insurance policy question of demand and notice for repayment of loan made by insurer to insured *held* immaterial in view of contract evidenced by policy and loan agreement.

4. Where such loan agreement was made pursuant to the provisions of the policy, under which the policy had lapsed for non-payment of premium, and the only provision in policy for repayment of loan was in the reinstatement clause, which gave insured the right, upon reinstatement, to pay, or continue, the loan, at his option, the insured, having failed to get reinstated through his own fault, was precluded from repayment of loan, as was also the beneficiary of the policy after insured's decease, hence tender of amount of loan thereafter did not make the entire reserve on policy available to purchase extended insurance and thereby carry insurance beyond date of insured's death.

5. Indorsement on an insurance policy, after lapse for non-payment of premiums, as to term of extended insurance, being in the nature of an admission, insurance company is not estopped from correcting a mistake therein, unless insured or beneficiary has been induced by indorsement to act or refrain from acting to his injury.

6. The rule that, where a person's conduct or representations are such as to induce another to act or refrain from action, and the latter acts or refrains from action, it may be presumed, or inferred, that in so doing he relied upon such conduct or repre-

13

sentations, does not dispense with other proof of action or non-action, and it is only when action or non-action is shown that the presumption of reliance will be indulged.

7. Where insurance company, upon lapse of policy, indorsed thereon term of extended insurance, which by mistake was for a longer period than it should have been, and there was no evidence that insured or beneficiary acted or refrained from action because of such indorsement, it will not be presumed that insured's failure to get policy reinstated was because of his reliance on indorsement, or that had he got it reinstated he would have kept it in force until his death, and insurance company is not estopped from showing mistake in indorsement.

8. Insurance company is not estopped from correcting such mistake in such indorsement, where reliance or action of insured or beneficiary on indorsement is not shown, because of notice printed on outside of policy that it was not necessary for insured or beneficiary to employ agency of any person, etc., to collect insurance, etc., such notice only emphasizing the fact that insured and beneficiary might rely on indorsement, a right they otherwise had.

9. On review the Supreme Court will not consider a question not raised in the court below.

10. In action on life insurance policy, instruction of trial court that indorsement of extended insurance on policy was not to be treated as a contract between insured and company, but merely as an admission, and that its indorsement on policy gave it no more force than though it had been on a separate piece of paper, and that it stood in the same class as a receipt for money which might be explained in proper cases, did not indicate to jury the weight to be given to indorsement as an admission.

11. Where language of exception to an instruction was not such as to fairly apprise trial court of nature of error claimed, the Supreme Court will not consider such exception.

12. In action on a life insurance policy, where Supreme Court in two decisions had passed upon effect of an indorsement of extended insurance upon a policy after its lapse for non-payment of premium, as an admission, and in another decision had also dealt with the question of such indorsement as an estoppel, petition filed by plaintiff more than a year after jury trial

had resulted in verdict for defendant, during which time said Supreme Court decisions had stood unchallenged, seeking to vacate such decisions and to secure opportunity for reargument of the effect of such indorsement both as an admission and as an estoppel, will not be granted.

13.   When a superior judge was designated under G. L. 1581 to sit, and did sit, in original hearing of case in Supreme Court on exceptions, in place of one of the Justices who was absent from such hearing, but later, after Court had ordered reargument of two questions in case, the Justice who had previously been absent occupied his usual place on the bench at such reargument and wrote and delivered the opinion in the case, plaintiff's challenge of qualifications of such Justice to take part in consideration and determination of case, as basis of petition for reargument, is without merit, both parties having known that such Justice was assuming to act in the case at time of reargument, and by their silence, having tacitly consented thereto.

ACTION OF CONTRACT on a life insurance policy. Answer: That the policy had lapsed by reason of non-payment of premiums, and that the term of continued insurance to which insured was entitled under policy had elapsed prior to his death and that policy was not then in force. Replication: That defendant, having full knowledge for computing term of extended insurance in its possession, had made an indorsement on the policy extending insurance at a reduced amount to a time beyond the date of insured's death and that the policy was then in force; that by such indorsement the defendant made an election as to the term of extended insurance and waived any different right; and that insured and plaintiff, having relied on such indorsement, the defendant was estopped from claiming that the indorsement was wrong. Rejoinder: That the terms of the policy contract determined the rights of parties, and denial of estoppel. Trial by jury at the March Term, 1922, Chittenden County, *Willcox, J.,* presiding. Verdict and judgment for defendant. The plaintiff excepted. Petition by plaintiff for permission to reargue, in connection with his exceptions, certain points dealt with when case was previously in Supreme Court was filed in Supreme Court at the November Term, 1923. The opinion states the case. *Judgment affirmed. Petition dismissed.*

*Charles H. Darling* for plaintiff.

A loan with the policy pledged as collateral security is governed by the laws of loans and pledges and the right of redemption. *New York Life Ins. Co.* v. *Curry,* 115 Ky. 100, 72 S. W. 736, 103 A. S. R. 297; *Mutual Life Ins. Co.* v. *Twyman,* 121 Ky. 513, 92 S. W. 335, 121 A. S. R. 471; *Hubbard* v. *Equitable Life Assurance Society,* 81 W. Va. 663, 95 S. E. 811, 4 A. L. R. 886; *Lovell* v. *St. Louis Mutual Life Ins. Co.,* 111 U. S. 264, 4 Sup. Ct. Rep. 390; *Union Cent. Life Ins. Co.* v. *Woods,* 37 N. E. 180, 39 N. E. 205.

The right to redeem is inviolable, attaches to every pledge, and cannot be contracted away without new consideration. *Earle's Adm.* v. *Blanchard,* 85 Vt. 288, 298; Jones on Collateral Securities, §§ 552, 553, 556, 560; *White River Savings Bank* v. *Capital Savings Bank,* 77 Vt. 123; *Taggart* v. *Packard,* 39 Vt. 628; *Chambers* v. *Kunzman,* 45 Atl. 599; *Peugh* v. *Davis,* 96 U. S. 332; *Baldwin* v. *Bradley,* 69 Ill. 32, 36; *Hart* v. *Burton,* (Ky.), 7 J. J. Marshall, 322; *Gardner Clarke* v. *Wm. Henry,* 2 Cowan (N. Y.) 322, 324; *Hughes* v. *Johnson,* 38 Ark. 285; *Glidden* v. *Mechanics Nat. Bank,* 42 N. E. 995; *Babcock* v. *Case,* 100 A. D. 654; *Hubbard* v. *Equitable Life Assurance Society, supra.*

Neither the policy, nor the extended insurance, nor the right thereto is forfeited by non-payment of loan or interest thereon. *New York Life Ins. Co.* v. *Curry, supra; Drury* v. *New York Life Ins. Co.,* 103 A. S. R. 351; *Mutual Life Ins. Co.* v. *Jarboe,* 80 A. S. R. 343; *Eddy* v. *Phoenix Mutual Life Ins. Co.,* 65 N. H. 27, 23 A. S. R. 17; *Lucketts* v. *Townsend,* 49 A. D. 723; *Mutual Life Ins. Co.* v. *Twyman, supra; Williamson* v. *Culpepper,* 50 A. D. 175.

Even stipulation that pledgor forfeit all right on failure to pay interest does not cut off right to redeem. Jones on Collateral Securities, § 554; *Ritchie* v. *M'Mullen,* 79 Fed. 522; *N. Y. Life Ins. Co.* v. *Curry, supra; Lucketts* v. *Townsend, supra.*

While mistake, rescission, restoration, and redemption of pledges are governed by equitable principles, courts of law generally have jurisdiction. Jones on Collateral Securities, § 556; *Castoriano* v. *Dupe* (N. Y.), 39 N. E. 1065; *Bryson* v. *Raynor,* 25 Md. 424, 90 A. D. 69; *Md. Fire Ins. Co.* v. *Dalrymple,* 25 Md. 242, 89 A. D. 779; *DeBevoise* v. *H. & W. Co. et al.,* 58 Atl. 91; *Beatty* v. *Sylvester,* 3 Nev. 228; *Kingsbury* v. *Phelps, Admr.,* 1 Wright (Ohio), 370; *Thomas et al.* v. *Beals,* 27 N. E. 1004; *Cohen* v. *N. Y. Mutual Life Ins. Co.,* 50 N. Y. 10, 10 A. R. 552.

The insurance company, having elected its remedy, is bound thereby and may not adopt an inconsistent course. *Am. Car & Foundry Co.* v. *Smock,* 91 N. E. 749; *Martin* v. *Rutledge,* 94 Vt. 258; *White* v. *White,* 68 Vt. 161, 165.

Re-delivery or surrender of the pledge to the pledgor terminates the pledgee's title. Jones on Collateral Securities, § 40; *Palmtag* v. *Dontrick,* 59 Cal. 154, 43 A. R. 245; *Bodenhammer* v. *Newson,* 69 A. D. 775; *Treadwell* v. *Davis,* 34 Cal. 601, 94 A. D. 770; *First Nat. Bank of Macon* v. *Nelson,* 95 A. D. 400; *Fletcher* v. *Ellis,* 2 Aik. (Vt.) 115; *Russell* v. *Fillmore,* 15 Vt. 130; *Lucketts* v. *Townsend, supra,* and note at p. 733.

When an insurance company declares a default and forfeiture for non-payment of premiums and some excuse may be found for such default or non-payment, insured may tender premiums in arrears and recover upon policy of insurance at maturity, and by same reasoning this loan may be paid and policy extended. *Metropolitan Life Ins. Co.* v. *McCormick,* 49 N. E. 44, 65 A. S. R. 392, 397; *Day* v. *Conn. Gen. Life Ins. Co.,* 45 Conn. 480, 29 A. R. 693, 702; *Hayner* v. *Am. Pop. Life Ins. Co.,* 69 N. Y. 435; *Cohen* v. *N. Y. Mutual Life Ins. Co., supra; Williamson* v. *Culpepper, supra; Callanan* v. *Powers,* 92 N. E. 747; *Palmer* v. *Mutual Life Ins. Co.,* Ann. Cas. 1914D, 160.

*Theodore E. Hopkins* for the defendant.

The burden is on the party setting up the estoppel to show affirmatively that he has relied upon the conduct of the party against whom he invokes the doctrine of estoppel and has been induced by it to act or refrain from doing so. *Druin* v. *B. & M. Railroad,* 74 Vt. 34; *Welles* v. *Austin,* 59 Vt. 157; *Wakefield* v. *Crossman,* 25 Vt. 298; *Royce* v. *Carpenter,* 80 Vt. 37; *Earl* v. *Stevens,* 57 Vt. 474; *Thrall* v. *Lathrop,* 30 Vt. 307; *Kimball* v. *N. Y. Life Ins. Co.,* 96 Vt. 19.

The representations of the party to be estopped must be really acted upon to the prejudice of the other party. Bigelow on Estoppel, Ch. 18, § 8.

Parties to a contract of pledge may regulate in advance the remedy to which pledgee must result in subjecting pledged property to payment of debt. *Clare* v. *Mutual Life Ins. Co.,* 201 N. Y. 492, 94 N. E. 1075, 35 L. R. A. (N. S.) 1123; *Stevens* v. *Mutual Life Ins. Co.,* 227 N. Y. 524, 125 N. E. 682; *Palmer* v. *Mutual Life Ins. Co.,* 114 Minn. 1, 130 N. W. 250.

Under policy, it being company's duty after lapse of policy without application or request, upon failure of insured to elect an option, to set aside extended insurance provided in policy, and no right then existing of notice and demand or tender of loan so as to enlarge extended insurance, the loan was properly deducted at that time. *Palmer* v. *Mutual Life Ins. Co.*, (N. Y.), 38 Misc. 318; *Eagle* v. *N. Y. Life Ins. Co.*, (Ind.), 91 N. E. 814; *McCall* v. *Int. Life Ins. Co.*, (Mo. App.), 193 S. W. 860; *Sherman* v. *Mut. Life Ins. Co.*, 53 Wash. 523, 102 Pac. 419; *Salig* v. *U. S. Life Ins. Co.*, (Pa.), 84 Atl. 826; *Palmer* v. *Mutual Life Ins. Co.*, (Minn.), 130 N. W. 250; *Fountain* v. *Security Mut. Life Ins. Co.*, (Ga.), 93 S. E. 118; *Gilek* v. *N. Y. Life Ins. Co.*, (Neb.), 145 N. W. 693; *Fidelity Mut. Life Ins. Co.* v. *Oliver*, (Miss.), 71 So. 302; *Adams* v. *Mutual Life Ins. Co.*, (Ind.), 132 N. E. 688; *Candelaria* v. *Coulmbian, etc.*, (Col.), 153 Pac. 447; *Penn. Mut. Life Ins. Co.* v. *Bancroft*, (Ala.), 93 So. 566; *Salvidge* v. *Mutual Life Ins. Co.*, (Iowa), 191 N. W. 862; *Frese* v. *Mut. Life Ins. Co.*, 11 Col. App. 387, 105 Pac. 265; *Meredin Life Ins. Co.* v. *Hobbs*, (Ala.), 76 So. 429; *Hartford Life Ins. Co.* v. *Benson*, (Tex.), 187 S. W. 351; *Mills* v. *Natl. Life Ins. Co.*, 136 Tenn. 350, 189 S. W. 691.

Non-payment of premiums works a forfeiture without notice. *Wilson* v. *Royal Union Mut. Life Ins. Co.*, 137 Iowa, 184, 114 N. W. 1051; *Fraser* v. *Home Life Ins. Co.*, 71 Vt. 482; *Tripp* v. *Vermont Life Ins. Co.*, 55 Vt. 100; *Holly* v. *Metropolitan Life Ins. Co.*, 105 N. Y. 437, 7 Cent. Rep. 265; *Bosworth* v. *Western Mut. Aid Society*, 75 Iowa, 582; *Ashbrook* v. *Phoenix Mut. Life Ins. Co.*, 94 Mo. 72.

SLACK, J.   The action is contract on a life insurance policy. The defendant had a verdict and judgment below, and the case is here on plaintiff's exceptions.

The first question for review is whether the court erred in overruling plaintiff's motion for judgment *non obstante veredicto*.   The ground of the motion, which is somewhat prolix, is that after this Court held that the defendant was entitled to correct any error it might have made in computing the term of extended insurance, to wit, on August 17, 1920, the plaintiff tendered to the defendant the amount of a loan it had made to the insured and himself on this policy, with interest thereon, which loan and interest then due, the defendant, in making such

computation, deducted from the amount otherwise available to purchase extended insurance, and, thereafter, pleaded such tender by way of replication; that the subsequent pleadings of the defendant admitted the making of the tender, but denied the right to make it at that or any other time; and the motion asserts the right, both at law and in equity, to apply such tender in payment of the loan at the time of, and in connection with, any re-computation necessary to ascertain the term of extended insurance.

In considering the question thus presented, certain provisions of the loan agreement and of the policy, and the status of the insured respecting them, must be borne in mind.

The plaintiff is beneficiary under life insurance policy No. 7,017,722 issued by defendant to one Charles B. Kimball, February 5, 1908. The policy provides that:

> "At any time after three full years' premiums have been paid and while this policy is in full force, the Company will advance, on pledge of the Policy and on the sole security thereof, an amount which, with interest thereon to the end of the current policy year and with any unpaid portion of said year's premium, shall, at the option of the owner, be equal to or less than the Cash Surrender Value at the end of such policy year; interest on the loan will be at the rate of five per centum payable annually; and if interest is not paid when due, it shall be added to the principal and bear interest at the same rate. Failure to repay any such advance or to pay interest shall not avoid this Policy unless the total indebtedness hereon to the Company shall equal its Cash Surrender Value, nor until one month after notice of such fact shall have been mailed by the Company to the last known address of the Insured and of the Assignee of record at the Home Office of the Company, if any."

On November 2, 1910, the defendant loaned to the insured and the plaintiff $64.00 under an agreement, the material parts of which are:

> "Pursuant to the provisions of Policy No. 7,017,722 issued by the New York Life Insurance Company on the life of Chas. B. Kimball said Company has this day advanced to the undersigned, and the undersigned have this day received

from said Company, the sum of Sixty-four and no-100 Dollars ($64.00), and pledged said Policy with said Company as sole security therefor.

''In consideration of the premises, the undersigned hereby jointly and severally agree with said Company as follows:

''1.   To pay said Company, on the next anniversary of said policy, interest on said advance at the rate of five per centum per annum from this date to said anniversary, and annually thereafter on each anniversary of said Policy.

''2.   To pledge, and do hereby pledge, said Policy as sole security for the repayment of said advance and interest, and herewith deposit said Policy with said Company at its Home Office, reserving, however, the right to reclaim said Policy by repayment of said advance with interest, at any time before due, said repayment to cancel this agreement without further action.

''3.   That the sum so advanced shall become due and payable either—

''(a)   If any premium on said Policy is not paid on the date when due, in which event the sum so due and payable, with interest, shall, without demand or notice of any kind, every demand and notice being hereby waived, be satisfied in the manner provided in said policy; or

''(b)   On the maturity of the policy as a death-claim or as an endowment, or on the surrender of the policy for a cash value.   In any such event the amount so due and payable shall be deducted from the sum to be paid or allowed under the Policy.

''4.   If interest is not paid when due it shall be added to the principal and bear interest at the same rate.   Whenever the principal of said loan with overdue interest added thereto shall equal the Cash Surrender Value of said Policy, then the Policy shall become void and of no effect at the time and upon the conditions provided in said Policy for such contingency.''

The policy provides that the payment of a premium shall not maintain the policy in force beyond the date when the next premium is payable, but that the policy may be reinstated within a specified time, upon certain conditions, and that if reinstated

''any loan which exists at the date of default, together with in-
terest in accordance with the loan provisions of this Policy to the
date of reinstatement to be, at the option of the Insured on ap-
plication for such reinstatement, either paid in cash or continued
as an indebtedness against this Policy.''

The premiums were payable semi-annually, on February
5, and August 5. The premium due August 5, 1912, was not
paid. Later, the insured attempted to get the policy rein-
stated, but all negotiations to that end ceased November 5, 1912,
because of his failure to meet other payments then due. See
96 Vt. 19, 116 Atl. 119. Thereafter, so far as appears, he paid
no attention to the policy or to the loan, nor did the plaintiff,
until after the insured's death, which occurred January 13,
1916. Thus by the express terms of the policy, it terminated on
account of default in payment of premiums; and the loan, under
the terms of the loan agreement, became due at the same time.
This was a situation which the parties foresaw might arise and
undertook, at the outset, to provide for. They agreed that if the
loan became due through failure of the insured to pay premiums
on the policy it should be ''satisfied in the manner provided in
said policy.'' And the policy provides that, ''the owner may
elect within three months after any default in payment of pre-
miums, but not later, either, (a) To accept the Cash Surrender
Value; or (b) To have insurance for the face amount of this
Policy plus any outstanding dividend additions and less any
indebtedness to the Company hereon continued in force from the
date of default for such term as is hereinafter provided, but
without future participation and without the right to loans or
Cash Surrender Value; or, (c) To purchase non-participating
paid-up insurance payable at the same time and on the same con-
ditions as this Policy.'' It further provides that the term for
which such insurance will be continued under option (b) will
be such as the cash surrender value of the policy will purchase
at a net single premium, etc., and that if the insured shall not
within three months from default, surrender the policy for cash
under option (a) or for paid-up insurance under option (c),
''the insurance will be continued as provided in option (b).''
The cash surrender value is made up of the reserve on the policy
and on any dividend additions thereto, at the date of default,
computed according to the American Table of Mortality, with
interest at the rate of three per centum per annum, less the

amount of any indebtedness to the company, and less a surrender charge the amount of which depends upon the length of time the policy had been in force at the time of default.

The insured having failed to elect to take under options (a) or (c), the defendant, on or about August 4, 1913, without previous demand or notice, undertook to ascertain the amount, and term, of extended insurance to which he was entitled under option (b). The computation then made showed that he was entitled to have insurance for $1,479 continued to May 6, 1916. That fact was indorsed on the policy, which was returned to the insured and retained by him to the time of his death. After the happening of the latter event, the defendant claimed to have discovered a mistake in its computation due, as appears in the 96 Vt. 19, 116 Atl. 119, to its having given the insured credit for certain dividends to which he was not entitled as a matter of right; and it claimed that, in fact, the insurance was not in force at the time of his death, and refused to pay the claim, whereupon, this suit was brought. After we held that the defendant had the right to correct any error it made in the computation (see 94 Vt. 100, 108 Atl. 921) plaintiff made the tender which is the basis of his motion.

[1] It is contended that defendant held the policy as a mere pledge to secure the payment of the loan and; therefore, could not lawfully liquidate the loan out of the proceeds of the policy without previous demand and notice; that the waiver provision contained in paragraph 3, subdivision (a) of the loan agreement is void, and that, since the defendant proceeded without demand or notice, the insured had the right during his lifetime, and the plaintiff now has the right, to repay the loan and thereby leave the entire reserve on the policy available to purchase extended insurance, which in this case would be sufficient to carry such insurance beyond the date of insured's death. In support of this contention, plaintiff calls attention to a large number of cases where pledge contract and the rights of the respective parties under them have been considered. With those authorities we have no quarrel. It is enough to say that, they are not applicable to cases like the one at bar. Pledges of this character are recognized as standing in a class by themselves, so far as the method of enforcement is concerned. It is perfectly obvious that because of the character of the thing pledged, the peculiar interest of the pledgor therein, and the nature of the

pledge contract, the common law method of enforcement is inadequate and inappropriate. For this reason, stipulations relating to the disposition of the pledge, and the application of the proceeds, which are not obnoxious to the law and do not result in penalizing the pledgor for his default, are generally upheld. Illustrations of this will be found in the following cases. *McCall* v. *International Life Ins. Co.,* 196 Mo. App. 318, 193 S. W. 860; *Eagle* v. *New York Life Ins. Co.,* 48 Ind. App. 284, 91 N. E. 814; *Ruane* v. *Manhattan Life Ins. Co.,* 194 Mo. App. 214, 186 S. W. 1188; *Stevens* v. *Mutual Life Ins. Co.,* 227 N. Y. 524, 125 N. E. 682, 18 A. L. R. 1141; *Clare* v. *Mutual Life Ins. Co.,* 201 N. Y. 492, 94 N. E. 1075, 35 L. R. A. (N. S.) 1123; *Palmer* v. *Mutual Life Ins. Co.,* 114 Minn. 1, 130 N. W. 250, Ann. Cas. 1912B, 957; *Burridge* v. *New York Life Ins. Co.,* 211 Mo. 158, 109 S. W. 560.

[2]     Upon the authority of the above cases, the waiver provision in paragraph 3, subdivision (a) of the loan agreement must be sustained, unless it violates the insured's rights under the policy, and we do not think that it does. The loan provision of the policy only enumerates in a general way the conditions upon which loans will be made. Neither that, nor any other provision of the policy, requires demand or notice as a prerequisite to the liquidation of the policy when it terminates, as here, through non-payment of premiums. This silence of the parties on the subject would seem to justify the inference that power to act without such demand or notice was intended to be conferred. *McDowell* v. *Chicago Steel Works et al.,* 124 Ill. 491, 16 N. E. 854, 7 A. S. R. 381. But be that as it may, the policy which is the paramount contract, when read as a whole, as it must be, clearly negatives such requirement. The parties thereby agreed, in advance, in clear and unambiguous terms, just what should be done with this, or any other indebtedness to the company, in the event that the policy terminated as it did in this case. The insured knew when the policy terminated, because it was the result of his own fault; he knew that the loan thereupon became due; he knew the right he had conferred upon the company, in such event, and to require the company to notify him of what he already knew, or that it had done, or was about to do, what he had expressly authorized it to do, would be absurd.

[3, 4]     But, since plaintiff's claim that insured had the right, after the policy lapsed for non-payment of premiums, to pay the loan, and by so doing have the benefit of the entire

reserve in extended insurance, cannot be entertained, in view of the contract evidenced by the policy and the loan agreement, the question of demand and notice is immaterial. The policy was not cancelled or forfeited for non-payment of the loan, or interest thereon, but, under the terms thereof, terminated through default of the August 5, 1912, premium, without action on the part of the company. *Fraser* v. *The Home Life Ins. Co.*, 71 Vt. 482, 45 Atl. 1046; *New York Life Ins. Co.* v. *Stratham*, 93 U. S. 24, 23 L. ed. 789; *United States Life Ins. Co.* v. *Ross*, 159 Ill. 475, 42 N. E. 859; *Roehner* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 160. When that event happened, the rights of the parties were automatically adjusted by the express terms of their agreement. The company was then entitled to satisfy the loan out of the reserve, and was otherwise accountable to the insured only for the balance. That he could have in cash, or paid-up insurance, or extended insurance. The relation of the loan agreement to the policy should be noted in this connection. The policy provides that the insured could borrow on the "sole security" of the insurance contract; and the loan agreement shows on its face that it was made "pursuant to the provisions of the policy," and that the loan was made, and obtained, "in consideration" of the pledge of the policy "as sole security" for the payment of the loan, with the right, in case the policy terminated for non-payment of premiums, to liquidate the loan "in the manner provided in the policy," namely, in the manner already indicated. The only provision for repayment of the loan, after the policy had lapsed for non-payment of premiums, appears in that part of the reinstatement clause of the policy above quoted, which gave the insured the right, upon reinstatement, to pay, or continue, the loan, at his option. Hence he could not exercise the right of repayment of the loan after such default, except in connection with reinstatement of the policy. The right he then had was not of repayment without reinstatement, but of reinstatement with the right to pay if reinstatement was effected. And having failed to get reinstated through his own fault, his right of repayment was gone. This result does not penalize the insured, or subject him to any hardship; he got what he contracted and paid for, in the precise manner in which he agreed to accept it. The situation discloses nothing inconsistent with sound public policy or violative of the substantial rights of the insured. *McCall* v. *International Life Ins. Co., supra.* Since

the policy was not avoided for non-payment of the loan or interest, the requirement of one month's notice in such event, found in the loan provision of the policy, has no application. The insured not having the right to repay, it follows that the plaintiff cannot exercise that right.

Neither the question of the insured's right to borrow money on the policy on the terms thereof, nor the right of the company to forfeit the policy for non-payment of the loan or interest thereon, are involved and, therefore, need not be considered.

[5-7]    The force to be given to the indorsement of extended insurance is again challenged by the plaintiff; and many cases involving the correction of mistakes, and showing what must appear to entitle a person claiming a mistake to relief therefrom, are called to our attention. But we see no occasion to depart from our holding in the 94 Vt. 100, 108 Atl. 921, that the indorsement was in the nature of an admission, and as such might be corrected, unless the company was estopped from so doing by its conduct and reliance thereon by the insured, which did not then appear. After that decision, the case was retried by jury, and the question of estoppel was again before us in the 96 Vt. 19, 116 Atl. 119, where it was held that the case was barren of evidence to show that either insured or the plaintiff was induced by the indorsement to act or refrain from action. It would have been more explicit had we added "to his injury," but it would seem that what was said should have been so understood. That holding is now attacked by plaintiff by way of petition for "permission to argue certain points in connection with exceptions now pending," filed since the exceptions herein were filed. Although the question raised is not properly before us, because of its importance, and our desire to correct any misunderstanding that may exist concerning our former holding, and since the petition must be dismissed for reasons appearing later, we consider the claim in this connection. It is strenuously urged that we erred in holding, as we there did, that there was no evidence that insured or plaintiff was induced by the indorsement to act or refrain from action, to their injury, because the presumption was that they relied thereon, to their injury, which was evidence in plaintiff's favor; and *Knight* v. *Wiffin*, 5 Q. B. 660; *Helme* v. *Phil. Life Ins. Co.,* 61 Pa. 107, 100 A. D. 621; *Voorhis* v. *Olmstead,* 66 N. Y. 113; and *Ste. Marie* v. *Wells,* 93 Vt. 398, 108 Atl. 270, are cited in support of this claim. Those cases are

authority for the proposition that where a person's conduct or representations are such as to induce another to act or refrain from action, and the latter acts or refrains from action, it may be presumed, or inferred, that in so doing he relied upon such conduct or representations. To this, as a general proposition, we agree. But this rule does not dispense with other proof of action or nonaction,—that fact will not be presumed. A person may rely upon what another says to him and still not do anything by reason thereof. And it is only when action or nonaction is shown that the presumption of reliance will be indulged. When the case was here before, it was, and now is, barren of evidence tending to show that insured or plaintiff did anything that could be presumed to have been done in reliance upon the indorsement. Indeed, the plaintiff testified on the former trial that, he never saw the policy until he received it from St. Louis after his son's death, and that he then first learned about the indorsement. The only nonaction that could possibly be attributed to reliance on the indorsement was insured's failure to get the policy reinstated, and in view of the affirmative proof that his only attempt to do so failed through his neglect to meet required payments and his failure thereafter to give any attention to overdue premiums down to August 4, 1913, when the indorsement was made, the presumption cannot be indulged that his failure to get the policy reinstated at some time was because of his reliance on the indorsement, much less can it be presumed, in the circumstances, that had he got it reinstated he would have kept it in force to the time of his death.

[8] Nor is the situation affected by the notice printed on the outside of the policy to the effect that it was not necessary for the insured or beneficiary to employ the agency of any person, etc., to collect the insurance, etc. That, at most, only emphasized the fact that they might rely on the indorsement, a right they otherwise had.

[9] It is also urged under the petition that the evidence of Mahoney at the last trial showed the indorsement to be a corporate act and, therefore, it was of greater evidentiary force than an ordinary admission or a receipt. This evidence does not change the situation, since the fact that the indorsement was signed by the president and secretary of the company shows the same thing; besides, so far as appears, the weight to be given

the indorsement as an admission was not raised in the court below.

This disposes of all questions necessary to be considered in connection with the main case, except those presented by the exceptions to the charge.

[10, 11]    The court charged the jury, in substance, that the indorsement of extended insurance on the policy was not to be treated by them as a contract between the insured and the company; that its significance, in the circumstances, was nothing more than an admission; that the fact that it was indorsed on the policy gave it no more force than though it had been on a separate piece of paper; and that it stood in the same class as a receipt for money, which might be explained in proper cases. The transcript, by which we must be controlled, shows the exception to be: "I desire an exception noted to that part of the charge in which the court said, in substance, that the indorsement was not a contract, and had no more force than a receipt." But assuming that this was prefaced by what appears in the plaintiff's brief, namely, "In view of the testimony of Mr. Mahoney," the result is not changed.

The court followed, in substance, the language of the opinion in the 94 Vt. 100, 108 Atl. 921. While language appropriately used in expounding the law may be misleading and, therefore, inappropriate in a charge to the jury, we do not think the language here used open to that objection. It was the duty of the court to instruct the jury that the indorsement did not constitute a contract, but was to be treated as an admission by the defendant and that, as such, it was open to explanation. That it did; and what it then said about the indorsement being of no more force than if made on a separate paper, and standing in the same class with a receipt for money was, manifestly, an attempt to elucidate the distinction between a contract and an admission. The court in no sense indicated to the jury what weight should be given to the indorsement as an admission, nor could the jury have so understood it. It is now urged that the testimony of Mahoney showed the indorsement to be a corporate act and, therefore, we infer, entitled to more weight than an ordinary admission. Be that as it may, the language of the exception was not such as to fairly apprise the court that that was what the trier had in mind. It is further urged that it should be presumed that the insured relied on the indorsement, to his injury,

and that the burden was on the defendant to show otherwise. The answer to this is that these questions were not raised by the exception. The court charged fully *as to the burden of proof,* and no exception was saved to what it said on that subject. We think the charge sufficient to meet any criticism that can fairly be made under the exception.

[12, 13] More than a year after the case was tried below, and more than ten months after the exceptions were filed, to wit, on April 25, 1923, the plaintiff filed the petition already referred to, wherein is set forth excerpts of what this Court said in the 93 Vt. 147, 106 Atl. 676, and 94 Vt. 100, 108 Atl. 921, as to the nature and effect of the indorsement as an admission, and what it said in the 96 Vt. 19, 116 Atl. 119, concerning estoppel, with a prayer that "if said holdings and decisions are held by this Court to be binding, controlling and conclusive upon the effect to be given to said indorsement, * * * * * * the several records, holdings and determinations in the aforesaid several cases, be brought forward on the docket and be vacated to the end that the rights of the plaintiff may be determined and secured." What is really sought is an opportunity to now argue the effect of the indorsement both as an admission and as an estoppel. The petition also challenges the authority of Mr. Justice Slack to take part in the consideration and determination of the case when it was last here.

The petition must be denied. Litigants will not be permitted to gamble on the outcome of litigation, and, if cast, trifle with the courts in the manner here attempted.

The situation, as appears of record, is this: The opinion in the 93 Vt. was filed January 25, 1919; that in the 94 Vt. was filed in November, 1919; and that in the 96 Vt. was filed February 13, 1922; and all stood unchallenged until after the plaintiff was cast in a jury trial at the March Term, 1922, of the Chittenden county court. When the case was argued in this Court at the February Term, 1921, Mr. Justice Slack was not present, and pursuant to the provisions of G. L. 1581, Superior Judge Fish was designated to, and did, act in his place. Later, for reasons not necessary to notice, the case, by order of this Court, was reargued on two questions not here material. With the full knowledge of both parties, Mr. Justice Slack occupied his usual place on the bench during the reargument, and later

wrote and delivered the opinion, which appears in the 96 Vt., and was filed, as we have seen, February 13, 1922.

In this situation, the plaintiff is not entitled, either as a matter of right, or fairness, to have the petition sustained. However, for reasons stated, we have considered, so far as we deem necessary, the questions thereby presented that relate to the force and effect of the indorsement.

The question concerning Mr. Justice Slack's connection with the case is without merit. It is not claimed that he was disqualified by reason of relationship, interest, prejudice, or the like, but merely that he was not present in Court when the case was argued originally, his place then being occupied by Superior Judge Fish. It is a matter of common knowledge among the attorneys who practice before this Court that cases are frequently submitted on briefs, or one party submits his brief and the other argues orally, and that a Justice is sometimes absent from the bench during part or all of the argument of a case. Granting, for the purpose of argument, that, generally parties have the right to be heard orally, if they assent to do otherwise, they will not be heard to complain later; and assent will be implied from silence. Both parties knew that Mr. Justice Slack was assuming to act in the case at the time it was reargued, and by their silence they tacitly assented thereto.

*Judgment affirmed. Petition dismissed.*