SAM GOLDBERG *v.* JOHN GINTOFF, ALIAS JOHN GYNTOWT.

February Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 13, 1941.

*Lee S. Tillotson* for defendant.

*Paul Gilioli* and *Louis A. Fucci* for plaintiff.

BUTTLES, J. This is a tort action for damages resulting from an alleged assault and battery of the plaintiff by the defendant. Trial below resulted in a plaintiff's verdict for $600. When this verdict was rendered the court read to the jury the provisions of P. L. Sec. 1687, repeated the substance of the instructions previously given on the subject of damages, returned the verdict to the jury and asked them to reconsider the case. After further deliberation the jury returned a verdict for $1054.60 which was accepted by the court and judgment was rendered for that amount. The case is here on the defendant's exceptions.

The defendant has briefed an exception to the resubmission of the case to the jury after the original verdict for the reason that the actual damages shown by the evidence amounted only to $308.85, and there was no evidence of loss of earnings or of pain and suffering, and no evidence indicating a permanent injury. P. L. Section 1687 reads thus: ''The judges of the county court before whom a cause is tried may, if they judge that the

jury has mistaken the law or evidence material to the issue, or has not paid proper attention thereto, cause it to return to a second and third consideration of the cause; and, if the jury does not alter or retract its verdict, the same shall be received.'' Such a provision of our statute, with no change here material, has been in force since 1787, and we find no case in which the authority of the court to act thereunder, in the exercise of a sound discretion, has ever been challenged. Of course it is challenged here only to the extent and for the reason indicated by the exception.

▮▮▮ In resubmitting the case the court gave the jury supplemental instructions on the subject of damages only, and it was in respect to that issue alone that the jury modified its original verdict. This Court has held that, in a proper case, the trial court has power, in the exercise of a sound discretion, to grant a motion to set aside a verdict as to damages only on the ground of inadequacy, and to order a new trial on that issue only. *Farr* v. *Fisher*, 107 Vt. 331, 334, 178 Atl. 883, 98 A. L. R. 926; *Bennett* v. *Robertson*, 106 Vt. 112, 169 Atl. 901; *Parizo* v. *Wilson et al.*, 101 Vt. 514, 144 Atl. 856. The question here presented is analogous to that arising upon consideration of such a motion.

Dr. Tyson was the only medical expert who testified. From his testimony the jury could find that upon examination of the plaintiff at the hospital after his injury he was found to be conscious and rational; that he had suffered a laceration over the left eye and a fracture of the skull in that region; that the fractured area was circular in shape about one and one-half inches in diameter; that the bone in this area was driven inward to a depth of about half an inch, necessitating an operation for removal of the bone driven inward, which was performed, in order to clean the wound and prevent pressure upon the covering of the brain; that the line of fracture extended into the bony roof of the socket of the eye and also into the sensory sinus of the frontal bone coming off the nose; that it was a compound fracture and it was thought advisable, because of danger of infection, not to open the covering of the brain, as would otherwise have been done, in an attempt to discover whether there had been an injury to that organ. The undisputed evidence also indicated that plaintiff's injury resulted from his being struck on

the forehead by the defendant with a monkey wrench; that he was in the hospital from March 5th, the day of his injury, until March 25th and returned there twice after that for examination and treatment; that on June 19th, the day of the trial, he was still nervous and unable to sleep well and was suffering back aches, inability to breathe through his nose and trouble with his vision; that since his injury he had been unable to do heavy work or lift heavy weights; that for a year or more, until three weeks before his injury, the plaintiff had been engaged with defendant and his wife in the business of butchering and selling meat; that the plaintiff's share of the profits of that business had been $12.50 to $17.50 weekly; that since his injury plaintiff had worked some for his nephew, "standing around and helping him a little with the butchering." The evidence does not disclose how much if anything he was paid for this work nor how much if anything he earned during the three weeks prior to his injury. It was unquestioned that plaintiff incurred hospital and medical expenses amounting to $308.85 as a result of his injury, which would leave $291.15 of the original verdict to cover the other elements of damage.

██ The evidence as to loss of earnings was very indefinite, and there was little direct testimony as to pain and suffering. But the court may take judicial notice that a severe bodily injury produces pain, *Bolton* v. *Ovitt*, 80 Vt. 362, 368, 67 Atl. 881, and it is here apparent from the severity of the injury and the length of time the plaintiff was disabled, coupled with the fact that he was conscious and rational when first taken to the hospital that the plaintiff endured much pain and suffering. The court also takes judicial notice of such natural laws as are matters of common knowledge. *Wellman, Admr.* v. *Wales*, 98 Vt. 437, 443, 129 Atl. 317. It is a matter of common knowledge that broken bones will unite by process of nature, but only when the broken parts can be placed and retained in apposition. It is perfectly apparent that with a part of the frontal bone of plaintiff's skull removed the remaining parts could not be placed in apposition and that a permanent injury would result.

██ Since there was evidence of pain and suffering and of a permanent injury it cannot be said that the resubmission of the case was error, as a matter of law, for the reason stated in the

exception. Nor can it be said that the court abused its discretion in asking the jury to reconsider the adequacy of the damages awarded.

■ The defendant excepted to that portion of the original charge of the court wherein the court stated that any probable future medical or hospital expenses might be included as a part of the actual damages. The instruction of the court to which this exception refers was as follows: ''If the evidence indicates to you the probability of any future expenses for medical, surgical or hospital care you should take that into consideration.'' The exception was taken in the language in which we have stated it and nothing further was said by defendant's counsel in regard thereto. It appears from the defendant's brief that the real point of his exception was intended to be that there was no evidence in the case which warranted a finding of probable future medical or hospital expenses, but the court might well have understood the exception to mean that the law did not permit future items of damage of this nature to be included in the verdict. This exception did not reasonably indicate to the court the fault found with its instruction and so is not appropriate to raise the question here. *Dailey* v. *Town of Ludlow,* 102 Vt. 312, 316, 147 Atl. 771; *Robinson* v. *Leonard,* 100 Vt. 1, 5, 134 Atl. 706; *Woodhouse* v. *Woodhouse et ux.,* 99 Vt. 91, 148, 130 Atl. 758; *Kimball* v. *New York Life Ins. Co.,* 98 Vt. 192, 207, 126 Atl. 553.

■ The defendant's exception ''to the court's statement to the jury in the supplemental charge that the evidence of Dr. Tyson, if believed by the jury, indicates a permanent injury and that the jury should find some payment for that injury'' is without merit. As we have seen, the testimony of Dr. Tyson did indicate a permanent injury, but the court's instruction as to awarding damages for such injury was not of the peremptory character indicated by the last clause of the exception. The court's language was: ''You should estimate what damage, *if any,* that permanent personal injury will be to this plaintiff; and you should include in your verdict such an amount as in your judgment is a fair compensation for that permanent injury.'' We cannot agree with the defendant that this feature of the case was unduly emphasized.

48

■ The defendant excepted to "the failure of the court, in its supplemental charge, to instruct the jury that, if they saw fit, they might return the same verdict without change, and that they were the sole judges of the amount of the verdict to be rendered." The last clause of P. L. 1687, which was read to the jury, provides that "if the jury does not alter or retract its verdict the same shall be received." After asking the jury to reconsider on the subject of actual damages the court added: "we of course give you to understand the entire case is under your control until such time as the verdict is returned and received here." At the conclusion of the supplemental charge the court returned the original verdict to the jury, saying: "If you need another verdict and you will inform the officer we will be glad to furnish you with a duplicate form such as the one you have." From what the court thus said and did it is impossible to believe that the jury did not understand their right to return their original verdict unchanged and to determine the amount of any verdict that might be rendered.

We have considered all of the exceptions briefed by the defendant and find no error.

*Judgment affirmed.*